Stefano Riznyk, Esq.      SBN 135688
**SAN DIEGO BIZ LAW APC**
4225 Executive Square, Suite 600
La Jolla, CA 92037
Telephone:  (619) 793-4827
Facsimile:   (310) 388-5933

Attorney for Plaintiff, BUR-TEX HOSIERY, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

BUR-TEX HOSIERY, INC., an
Alabama corporation,

      Plaintiff,

v.

WORLD TECH TOYS, INC., a
California corporation; INOV8
MARKETING LLC, a New York
limited liability company; JACK
SAFDEYE, an individual; DAVID
LINKER, an individual; and DOES 1
through 10, inclusive,

      Defendants.

Case No:

Judge:
Dept:

**VERIFIED COMPLAINT FOR:**

**(1) BREACH OF CONTRACT;**
**(2) BREACH OF IMPLIED CONTRACT;**
**(3) BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING;**
**(4) FRAUD IN THE INDUCEMENT;**
**(5) INTENTIONAL MISREPRESENTATION;**
**(6) INTENTIONAL INTERFERENCE WITH CONTRACT;**
**(7) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**
**(8) UNFAIR COMPETITION;**
**(9) CONVERSION [CAL PENAL CODE § 496(c)];**
**(10) CONSPIRACY**

**DEMAND FOR JURY TRIAL**

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

Plaintiff BUR-TEX HOSIERY, INC. hereby alleges the following as against all Defendants:

## **PARTIES**

1. Plaintiff BUR-TEX HOSIERY, INC. (hereinafter "Plaintiff" or "BUR-TEX") is and at all times herein mentioned, an Alabama corporation conducting business in and under the laws of the state of Alabama with an entity location commonly known as 521 Graves Street, Fyffe, Alabama 35971.

2. Plaintiff is informed and believes, and thereon alleges that Defendant WORLD TECH TOYS, INC. (hereinafter "Defendant" or "WORLD TECH TOYS") at all times mentioned herein is a California corporation conducting business in and under the laws of the state of California with an entity location address commonly known as 28777 Witherspoon Parkway, Valencia, California 91355.

3. Plaintiff is informed and believes, and thereon alleges that Defendant INOV8 MARKETING LLC (hereinafter "Defendant" or "INOV8") at all times mentioned herein is a New York limited liability company conducting business in and under the laws of the state of New York with an entity location address commonly known as 45 W. 36th Street, New York, New York 10018.

4. Plaintiff is informed and believes, and thereon alleges that Defendant JACK SAFDEYE (hereinafter "Defendant" or "SAFDEYE") at all times mentioned herein is a resident of the County of Albany, State of New York.

5. Plaintiff is informed and believes, and thereon alleges that Defendant DAVID LINKER (hereinafter "Defendant" or "LINKER") at all times mentioned herein is a resident of the County of Cabarrus, State of North Carolina.

6. The true and correct names of Defendants named herein as DOES 1 through 10, inclusive, whether individual, corporate, associate or otherwise are unknown to Plaintiff, who therefore sues said Defendants by fictitious names,

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

and when the same have been ascertained, Plaintiff will amend this Complaint to allege their true names and capacities. Plaintiff is informed and believes, and thereon alleges, that each Defendant designated herein as a DOE Defendant was liable at the time of the incidents in question, and that each of the DOE Defendants is legally responsible in some manner for the events and happenings herein referred to and caused the injuries and damages to Plaintiff as herein alleged.

7.  At all times herein mentioned, the Defendants, and each of them, were agents, servants, or employees of any co-defendants, and acting within the scope and course of said agency and/or with the permission and consent of said co-defendants.

8.  Plaintiff is informed and believes and based thereon alleges that at all times herein mentioned, a unity of interest exists between the Defendants such that there is no distinction between the individual Defendants named herein and the entities and if the acts alleged herein against the entities are treated as to the acts of entities alone, an inequitable result will follow.

## **JURISDICTION AND VENUE**

9.  Jurisdiction exists pursuant to 28 U.S.C. § 1332(a)(1), which states that "the district courts shall have original jurisdiction of all civil actions where the matter in controversy is between the citizens of different states."

10. Plaintiff BUR-TEX is an active and registered Alabama corporation, while Defendant WORLD TECH TOYS is, at all times mentioned herein, a citizen of the state of California, Defendants INOV8 and SAFDEYE are, at all times mentioned herein, citizens of the State of New York, and Defendant LINKER is, at all times mentioned herein, a citizen of the State of North Carolina.

11. The damages Plaintiff suffered exceeds the requisite sum or value of $75,000,

exclusive of interest and costs as required by 28 U.S.C. § 1332.

12. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), which states that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."

## **SUMMARY OF THE CASE**

13. This case involves a family-owned business involved in the design and manufacturing of hosiery, and specifically, socks.

14. At the onset of the Covid-19 pandemic, this company was requested to obtain personal protective equipment ("PPE") in response to the Covid-19 pandemic. The PPE requested was specific in nature, and the order specifically required 100% nitrile gloves.

15. Upon ordering entire shipments of the gloves that were supposedly 100% nitrile, tests were conducted by the business owner, and it was discovered that the gloves were not, in fact, nitrile. Despite the fact that the seller subsequently provided product information stating that the gloves were comprised of nitrile-equivalent, the gloves were actually 100% plastic, which rendered the business in breach of the contract it had entered into to supply 100% nitrile gloves.

16. Plaintiff, a family-owned business who simply sought to fulfill an order for a customer, has therefore been forced to sustain massive losses in shipping, storage, and return of the non-conforming goods.

## **STATEMENT OF FACTS**

17. Plaintiff is a currently active and registered Alabama corporation, dealing in the design and manufacture of hosiery, and specifically, socks. Plaintiff offers various types of socks, including but not limited to athletic socks, compression socks, socks tailored specifically for arch support, compression socks, diabetic

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

socks, and boot socks, and caters to several national retailers.

### A.    Relationship with Defendants Safdeye and Linker

18. During the peak of the Covid-19 pandemic in 2020, when supply and demand for PPE was high, Plaintiff contacted Defendant LINKER to assist in the acquisition of PPE aid, such as gloves and masks.

19. Plaintiff and Defendant LINKER had a preexisting business relationship, wherein Plaintiff and Defendant LINKER were involved in a business owned by Defendant LINKER's grandfather called Shoe Show. On information and belief, Shoe Show, Inc., a footwear retailer company in North Carolina, is worth approximately $8 billion. When Plaintiff took over the Shoe Show business, Shoe Show had an account worth approximately $3,000,000.00. Plaintiff's substantial contributions resulted in the account increasing to approximately $7,000,000.00. The arrangement between Plaintiff and Defendant LINKER was for Defendant LINKER to ensure Plaintiff received orders, for which Plaintiff then sourced and shipped, splitting profits equally with Defendant LINKER.

20. Defendant LINKER thereafter introduced Plaintiff to Defendant SAFDEYE, who at all times mentioned herein was the Chief Executive Officer ("CEO") of Defendant INOV8. Through Defendants INOV8 and SAFDEYE, acting as a middleman to assist Plaintiff source PPE aid which Plaintiff then sold to prospective buyers, Plaintiff, Defendants INOV8 and SAFDEYE became agents of Plaintiff.

21. Although Defendant LINKER was not formally involved with Defendant INOV8, Defendant LINKER remained involved in the sourcing of PPE aid for Plaintiff. When PPE aid was obtained and purchased on behalf of Plaintiff, Defendant LINKER would receive a direct payment from Plaintiff as a

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

commission fee. On information and belief, Plaintiff alleges that Defendant INOV8 also compensated Defendant LINKER for each order placed on behalf of Plaintiff.

**B.    Cintas Purchase Agreement**

22. In approximately October of 2020, Cintas Corporation (hereinafter "Cintas"), a registered and active Ohio corporation, contacted Plaintiff to place an order for various PPE items in response to the ongoing Covid-19 pandemic, which had depleted manufacturers and suppliers worldwide of proper PPE to protect against the deadly Covid-19 virus.

23. Specifically, Cintas requested, among other PPE items, 100% nitrile disposable gloves.

24. On or about October 30, 2020, Plaintiff and Cintas executed a Purchase Agreement (hereinafter the "Cintas Purchase Agreement") for the specific PPE requested. (Please refer to the Cintas Purchase Agreement dated October 30, 2020, attached hereto as **Exhibit A** and incorporated by reference as though set forth in full.)

25. Under the Cintas Purchase Agreement, Cintas was to purchase the following from Plaintiff:

    A. Product: Powder Free, Disposable, Nitrile Gloves. Sizes: Small, Medium, Large, Extra Large.

    B. Product: Powder Free, Disposable, Nitrile Examination Gloves. Sizes: Small, Medium, Large, Extra Large.

26. The price per box of 100 powder free, disposable, nitrile gloves was to be agreed upon per an accepted purchase order.

27. The Cintas Purchase Agreement further provides the following:

> Purchase of Products and/or Services. From time-to-time during the term of this Agreement, Buyer may purchase the services and associated deliverables and/or products

as set forth on the attached Exhibit A and incorporated herein by this reference ("Products and/or Services") by issuing to Seller a purchase order for such Products and/or Services ("Purchase Order") or by such other means as described in Exhibit A. Exhibit A may be modified from time-to-time to include additional Products and/or Services or delete existing Products and/or Services; provided, however, that all such modifications to the Exhibit must be in writing and mutually agreed upon between both parties.

28. With respect to the inspection and/or rejection of the products ordered, the Cintas Purchase Agreement further provides the following:

Inspection and Rejection. Payment for the products and/or services delivered hereunder shall not constitute acceptance thereof. Buyer shall have the right to inspect such products and to reject any or all of said products which are, in the Buyer's sole judgment, defective or nonconforming with the product specifications outlined in this Agreement, including without limitation, the specifications set forth in Exhibit E. In such event, Buyer shall notify Seller, and upon Seller's receipt of such notification, Seller shall promptly correct or replace any defective or non-conforming Products or Services and the cost of such correction or replacement, including shipment, return and other administrative costs, shall be borne by the Seller. In no event shall Seller have more than ten (10) calendar days from receipt of Buyer's notice of the nonconformity to cure such nonconformity or to replace the nonconforming Product or Service. Products rejected and products supplied in excess of quantities called for in the applicable Purchase Order may be returned to Seller at Seller's expense and, in addition to Buyer's other rights, Buyer may charge Seller all expenses of unpacking, examining, repacking, and reshipping such products. In the event Buyer receives Products or Services whose defects or nonconformity is not apparent on examination, Buyer reserves the right to require replacement or repair, as well as setoff or payment

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

of damages incurred by Buyer as a result of such defects or other nonconformance. Nothing contained in this Agreement or related Purchase Orders shall relieve in any way the Seller from the obligation of testing, inspecting and quality control. Additional specifications and instructions related to inspection and rejection may be included in Exhibit E.

29. In addition, with respect to Delivery and Shipment, the Cintas Purchase Agreement provides:

Delivery and Shipment. When Cintas is responsible for shipping charges, Delivery and Shipment terms for Products and/or Services shall be the most optimal methods as reasonably determined by Buyer's Transportation Department. In the event of any delay during delivery, Seller shall be responsible for all costs associated with such delay, including the costs of temporary storage, unloading, loading and rearranging of Products.

30. In furtherance of the Cintas Purchase Agreement, Plaintiff contacted Defendants SAFDYE and LINKER, by and through Defendant INOV8, in order to source suppliers of the 100% nitrile gloves requested in order for Plaintiff to fulfill the multiple purchase orders from Cintas.

31. Per standard procedure, Defendants SAFDEYE and LINKER, by and through Defendant INOV8, would obtain the specification sheet from each manufacturer of gloves sourced and would forward the specification sheet to Plaintiff, who would in turn forward it to Cintas for approval prior to finalizing the purchase.

**C.    PPE-Aid Sourced from Defendant World Tech Toys**

32. Commencing in approximately November of 2020, Defendants SAFDEYE and LINKER, through Defendant INOV8, sourced products from various suppliers, including, among others, Defendant WORLD TECH TOYS, in order to assist

Plaintiff in fulfilling several purchase orders from Cintas.

33. On or about November 24, 2020, Defendant LINKER informed Plaintiff that Defendant WORLD TECH TOYS had 160,000 boxes of PPE-Aid nitrile gloves available (hereinafter "PPE-Aid") for a purchase price of $14.85 per box. In the same email, Defendant LINKER included a test report dated September 25, 2019, that purported to be results of a test that had been conducted to ascertain the exact composition of the PPE-Aid nitrile gloves from Defendant WORLD TECH TOYS. (Please refer to the SGS Test Report dated September 25, 2019, attached hereto as **Exhibit B** and incorporated by reference as though set forth in full.)

34. On or about November 25, 2020, a representative of Defendant SAFDEYE physically went to the warehouse where Defendant WORLD TECH TOYS' gloves were stored and took photographs of each side of the box, as well as photographs of the gloves themselves. Per procedure required by Cintas, Defendant SAFDEYE forwarded the photographs to Plaintiff, who then forwarded the photographs of the PPE-Aid boxes and gloves to Cintas. (Please refer to the photographs of PPE-Aid, attached hereto as **Exhibit C** and incorporated by reference as though set forth in full.)

35. The boxes of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves specifically stated: "nitrile gloves," and were shipped in boxes containing Defendant WORLD TECH TOYS' company logo.

36. On or about November 25, 2020, Plaintiff additionally received and sent the specification sheet for Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves to Cintas and informed Cintas that the price per box would be approximately $17.40. (Please refer to the Specification Sheet, attached hereto as **Exhibit D** and incorporated by reference as though set forth in full.)

37. No issues were raised by Cintas regarding either the photographs of Defendant

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

WORLD TECH TOYS' PPE-Aid nitrile gloves nor the specification sheet.

38. Accordingly, Cintas verbally approved Plaintiff's purchase of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves.

39. Cintas subsequently sent Plaintiff five separate purchase orders, dated December 2, 2020 (Cintas Purchase Order No. 3731435), December 2, 2020 (Cintas Purchase Order No. 3731460), December 7, 2020 (Cintas Purchase Order No. 3736551), December 9, 2020 (Cintas Purchase Order No. 3739217), and December 14, 2020 (Cintas Purchase Order No. 3743791), for a total of 160,000 boxes of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves at $17.40 per box for a total sum of approximately $2,790,960.00.

40. To effectuate the purchase of nitrile gloves from various manufacturers, including but not limited to Defendant WORLD TECH TOYS, Defendants SAFDYE and LINKER would first request Plaintiff submit payment to Defendant INOV8 in order to secure each purchase sourced. On or about November 24, 2020, Plaintiff received an invoice from Defendant INOV8 for $1,485,000.00, which Plaintiff submitted payment for upon receipt.

41. Cintas requested that the shipment of PPE-Aid nitrile gloves be delivered to Crane Worldwide Logistics (hereinafter "Crane"), a logistics company located in Compton, California.

42. After receiving the PPE-Aid nitrile gloves that Plaintiff obtained from Defendant WORLD TECH TOYS, Cintas placed an additional order for Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves.

43. In confirming that Defendant WORLD TECH TOYS possessed enough of the PPE-Aid nitrile gloves to fulfill Cintas' order, Defendant LINKER informed Plaintiff that Defendant WORLD TECH TOYS would require a 20% deposit on 600,000 boxes of the PPE-Aid nitrile gloves, amounting to a total deposit in the sum of approximately $1,782,000.00, paid by Plaintiff to Defendant

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

INOV8 on or about December 7, 2020.

44. In confirming that this order of PPE-Aid nitrile gloves was 100% nitrile to meet the requirements under the Cintas Purchase Agreement, Defendant SAFDYE informed Plaintiff that the vendor, Defendant WORLD TECH TOYS, certified that the PPE-Aid nitrile gloves were 100% nitrile. (Please refer to the email received by Plaintiff dated January 19, 2021, attached hereto as **Exhibit E** and incorporated by reference as though set forth in full.)

45. To effectuate this additional order from Cintas for Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves, Plaintiff sent Defendant INOV8 $1,095,397.90 on or about January 20, 2021.

46. Cintas subsequently committed to purchasing 600,000 boxes of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves at $17.40 per box in a sum of approximately $10,440,000.00 and would thereafter issue purchase orders. These purchase orders included purchase orders, dated January 19, 2021 (Cintas Purchase Order No. 3777081), January 21, 2021 (Cintas Purchase Order No. 3780549), January 21, 2021 (Cintas Purchase Order No. 3780559), January 21, 2021 (Cintas Purchase Order No. 3780554), and February 9, 2021 (Cintas Purchase Order No. 3799637).

47. On or about January 29, 2021, Defendant WORLD TECH TOYS informed Plaintiff that it was experiencing delays with the inbound shipment of the PPE-Aid nitrile gloves. After follow-up communications from both Plaintiff and Cintas, Defendant WORLD TECH TOYS informed both parties on or about February 2, 2021, that Defendant WORLD TECH TOYS did not have any PPE-Aid nitrile gloves available and expected to have freight available by February 4, 2021.

48. After receiving approximately 145,210 boxes of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves, Plaintiff received a call from Cintas informing

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

Plaintiff that the PPE-Aid nitrile gloves were not 100% nitrile, and that Cintas would be placing stops on all pick-ups for the PPE-Aid nitrile gloves from Defendant WORLD TECH TOYS.

49. In asserting that Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves were not 100% nitrile, Cintas informed Plaintiff that the PPE-Aid nitrile gloves were a blended composition, ascertained allegedly by the look and feel of the glove.

50. On or about February 22, 2021, Plaintiff received an additional specification sheet from Defendant SAFDEYE for Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves. (Please refer to the PPE-Aid Nitrile Gloves Specification Sheet, attached hereto as **Exhibit F** and incorporated by reference as though set forth in full.)

51. The additional specification sheet identified Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves as nitrile, FDA approved, and exam grade, and further included a test report dated October 6, 2020, describing the PPE-Aid nitrile gloves as "nitrile."

52. Defendant LINKER additionally sent Plaintiff a Bill of Lading from Feida Toys Co., Ltd., purportedly from Defendant WORLD TECH TOYS, concurrent with a text message that stated none of the PPE-Aid nitrile gloves were fake, "no one did anything wrong," "no one scammed us," and that the attached Bill of Lading proved that the PPE-Aid nitrile gloves were real.

53. On or about February 24, 2021, Plaintiff received an email from Cintas confirming that all pending orders of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves were cancelled.

54. Cintas additionally requested to be credited for all of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves that Cintas was returning and informed Plaintiff that Cintas would not pay any outstanding invoices until all credits

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

were issued for the non-conforming PPE-Aid nitrile gloves.

55. Cintas thereafter returned all of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves that were shipped in January and February of 2021, plus an additional 7,594 boxes of the first purchase order made on or about December 2, 2020, amounting to a total of 151,654 boxes returned to Plaintiff and a loss sustained by Plaintiff at a sum of $2,252,061.90, calculated by 151,654 boxes at Plaintiff's purchase price of $14.85 per box.

56. When Plaintiff requested that Cintas test Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves, Plaintiff was informed by Cintas that if Plaintiff wanted the gloves tested, Plaintiff would be required to test the gloves.

57. When Plaintiff requested that Defendant INOV8 return all money paid by Plaintiff for all outstanding orders of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves that had not yet been delivered to Cintas, Defendant SAFDEYE informed Plaintiff that he had already transferred the funds to Defendant WORLD TECH TOYS and that Defendant WORLD TECH TOYS would not refund. Defendant SAFDEYE stated that Defendant WORLD TECH TOYS owed money to the bank and that the bank would take possession of the PPE-Aid gloves if Plaintiff did not. Accordingly, Plaintiff was left with no choice but to have the outstanding orders shipped directly to Plaintiff's warehouse. The sum paid to Defendant INOV8 for these outstanding shipments was approximately $3,154,140.00, calculated by 212,400 boxes of PPE-Aid nitrile gloves at Plaintiff's purchase price of $14.85 per box.

58. Defendants SAFDEYE and LINKER subsequently sent Plaintiff a Settlement Agreement and Release (hereinafter the "Settlement Agreement") to be executed between Plaintiff and Defendant INOV8.

59. The Settlement Agreement, dated March 4, 2021, purported to release Defendant INOV8 from any liabilities relating to certain non-conforming

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

products that Defendant INOV8 purchased on behalf of Plaintiff. (Please refer to the Settlement Agreement, attached hereto as **Exhibit H** and incorporated by reference as though set forth in full.)

60. Specifically, the Settlement Agreement provided that Plaintiff would not be required to take delivery on product ordered from Defendant INOV8, and further, that Plaintiff acknowledged that Defendant INOV8 was required to deposit funds toward certain orders and that *if* Defendant INOV8 was able to recover any sum of the deposits paid, Defendant INOV8 would return the funds to Plaintiff.

61. The Settlement Agreement specified that Defendant INOV8 had paid a total deposit amount of approximately $1,665,725.00, however, the Settlement Agreement did not mandate that Defendant INOV8 return any funds to Plaintiff unless such funds were recovered by Defendant INOV8.

62. Defendants SAFDEYE and LINKER induced Plaintiff's execution of the Settlement Agreement by informing Plaintiff that Defendant INOV8 would recover Plaintiff's funds and further, that a third party would purchase the non-conforming goods but could not prior to execution of the Settlement Agreement.

63. Defendant LINKER further induced Plaintiff's execution of the Settlement Agreement by informing Plaintiff that if Plaintiff did not sign, Plaintiff would lose the Shoe Show business. Despite the fact that Plaintiff did sign the Settlement Agreement, Defendant LINKER, on information and belief, subsequently transferred the entire Shoe Show business into Defendant SAFDEYE's other company, Majesty Brands, without Plaintiff's knowledge or authorization, resulting in Plaintiff losing the Shoe Show business. Plaintiff possessed approximately $3,000,000.00 in inventory that was subsequently transferred to Majesty Brands.

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

64. On or about March 10, 2021, Defendant LINKER sent Plaintiff a letter from the United States Food & Drug Administration ("FDA") dated November 30, 2018, that purportedly identified Hongray USA Medical Products, Inc. (hereinafter "Hongray") as the manufacturer of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves.

65. On or about March 19, 2021, a representative on behalf of Plaintiff contacted Hongray, requesting confirmation that the brand PPE-Aid was comprised of 100% nitrile. Plaintiff received a response from Hongray the same day stating that the PPE-Aid brand was not manufactured by Hongray and that it was counterfeit.

66. After submitting Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves for testing, Plaintiff received a Chemical Test Report from Applied Technical Services dated May 27, 2021, concluding that the PPE-Aid nitrile gloves were comprised of phthalate plasticized PVC and were not nitrile. (Please refer to the Chemical Test Report dated May 27, 2021, attached hereto as **Exhibit G** and incorporated by reference as though set forth in full.)

67. In October of 2021, Plaintiff requested that Phenix Investigations, Inc. (hereinafter "Phenix") perform an investigation into Defendant WORLD TECH TOYS. On or about October 8, 2021, Plaintiff received the full asset investigation report on Defendant WORLD TECH TOYS and its owner, Kev Kouyoumijan, from Phenix. The investigation report identified that Mr. Kouyoumijan and his family own approximately $16,000,000.00 in property assets and entities controlled by family members, including Mr. Kouyoumijan. The investigation report further identified that two entities controlled by Mr. Kouyoumijan own private jets. These findings were entirely contradictory to Defendant SAFDEYE's representation that Defendant WORLD TECH TOYS owed money to the bank and therefore, Plaintiff was required to maintain

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

possession of the gloves. On information and belief, Plaintiff alleges that Defendant SAFDEYE made this representation knowingly and fraudulently with the specific intent to induce Plaintiff into accepting possession of the non-conforming PPE-Aid nitrile gloves that Cintas would not accept.

68. On or about November 15, 2021, Plaintiff contacted Mr. Kouyoumijan, informing Mr. Kouyoumijan of the test results Plaintiff had received regarding the PPE-Aid nitrile gloves. In response, Mr. Kouyoumijan requested that Plaintiff forward the specification sheet received from Defendant SAFDEYE. In a telephone conversation between Plaintiff and Mr. Kouyoumijan shortly thereafter, Mr. Kouyoumijan informed Plaintiff that Defendant SAFDEYE was aware that the PPE-Aid nitrile gloves were not 100% nitrile.

69. At all times, Defendant WORLD TECH TOYS marketed its PPE-Aid nitrile gloves as 100% nitrile.

70. At all times, Defendants SAFDEYE and LINKER represented to Plaintiff that Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves were 100% nitrile.

71. Defendant WORLD TECH TOYS represented to Plaintiff that the PPE-Aid nitrile gloves were comprised of 100% nitrile, when in fact, they were comprised of phthalate plasticized PVC.

72. Defendants SAFDEYE and LINKER represented to Plaintiff that the PPE-Aid nitrile gloves were comprised of 100% nitrile, thereby inducing Plaintiff to purchase large quantities of the PPE-Aid nitrile gloves, which led to profits for Defendant INOV8.

73. On information and belief, Plaintiff alleges that at all times, Defendants SAFDEYE and LINKER were aware that the PPE-Aid nitrile gloves were not 100% nitrile.

74. At all times, Defendants SAFDEYE and LINKER were aware of Plaintiff's obligations under the Cintas Purchase Agreement. Specifically, Defendants

SAFDEYE and LINKER were aware of Plaintiff's obligation to provide gloves comprised of 100% nitrile to Cintas.

75. Defendants SAFDEYE and LINKER were aware of Plaintiff's obligation to provide gloves comprised of 100% nitrile to Cintas because on several occasions when either Defendant SAFDEYE or Defendant LINKER apprised Plaintiff of available product, Plaintiff expressly inquired as to whether the product was 100% nitrile.

76. Defendants SAFDEYE and LINKER were aware that per the Cintas Purchase Order, the PPE-Aid nitrile gloves sold by Defendant WORLD TECH TOYS were required to be comprised of 100% nitrile.

### D. Damages Against Defendant World Tech Toys Incurred as a Result of the Non-Conforming Goods

77. As a result of the fact that Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves were not comprised of 100% nitrile, as marketed and as represented to Plaintiff, Plaintiff was required to accept returns of the non-conforming PPE-Aid nitrile gloves from Cintas and issue credits and refunds to Cintas.

78. On Plaintiff's Invoice No. 21942 to Cintas, dated December 2, 2020 and corresponding with Cintas Purchase Order No. 3731435, Plaintiff was required to accept a return of 7,594 boxes of the PPE-Aid nitrile gloves at Plaintiff's purchase price of $14.85 per box, sustaining an actual loss of approximately $112,770.90.

79. On Plaintiff's Invoice No. 2806 to Cintas, dated January 21, 2021 and corresponding with Cintas Purchase Order No. 3777081, Plaintiff was required to accept a return of 29,200 boxes of the PPE-Aid nitrile gloves at Plaintiff's purchase price of $14.85 per box, sustaining an actual loss of approximately $433,620.00.

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

80. On Plaintiff's Invoice No. 2808 to Cintas, dated January 22, 2021 and corresponding with Cintas Purchase Order No. 3780549, Plaintiff was required to accept a return of 27,880 boxes of the PPE-Aid nitrile gloves at Plaintiff's purchase price of $14.85 per box, sustaining an actual loss of approximately $414,018.00.

81. On Plaintiff's Invoice No. 2809 to Cintas, dated January 26, 2021 and corresponding with Cintas Purchase Order No. 3780554, Plaintiff was required to accept a return of 28,970 boxes of the PPE-Aid nitrile gloves at Plaintiff's purchase price of $14.85 per box, sustaining an actual loss of approximately $430,204.50.

82. On Plaintiff's Invoice No. 2810 to Cintas, dated January 26, 2021 and corresponding with Cintas Purchase Order No. 3780559, Plaintiff was required to accept a return of 29,000 boxes of the PPE-Aid nitrile gloves at Plaintiff's purchase price of $14.85 per box, sustaining an actual loss of approximately $430,650.00.

83. On Plaintiff's Invoice No. 2831 to Cintas, dated February 4, 2021 and corresponding with Cintas Purchase Order No. 3799637, Plaintiff was required to accept a return of 29,010 boxes of the PPE-Aid nitrile gloves at Plaintiff's purchase price of $14.85 per box, sustaining an actual loss of approximately $430,798.50.

84. In total, Plaintiff sustained actual losses in a sum of approximately $2,252,061.90, calculated by a total of 151,654 boxes at Plaintiff's purchase price of $14.85 per box, for Cintas' return of the non-conforming PPE-Aid nitrile gloves alone.

85. Plaintiff additionally sustained actual losses in a sum of approximately $3,154,140.00 paid to Defendant INOV8 for Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves that Defendant SAFDEYE forced Plaintiff to

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

accept and store, calculated by a total of 212,400 boxes at Plaintiff's purchase price of $14.85 per box.

86. Plaintiff's actual losses for the non-conforming PPE-Aid nitrile gloves amounts to a sum of approximately $5,406,201.90.

87. As Plaintiff sold the PPE-Aid nitrile gloves to Cintas at a price point of $17.40 per box, Plaintiff sustained lost profits in a sum of approximately $928,337.70, calculated by a total of 364,054 boxes sold to Cintas at a purchase price of $17.40 per box ($6,334,539.60) and purchased by Plaintiff at a purchase price of $14.85 per box ($5,406,201.90).

88. Cintas additionally cancelled an outstanding purchase order for 235,946 boxes of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves, amounting to lost profits sustained by Plaintiff in a sum of approximately $601,622.30, calculated by a profit to Plaintiff at $2.55 per box.

89. Plaintiff was further required to incur an interest rate at 4.5% on 364,054 boxes of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves, purchased for $14.85 per box and for which Plaintiff was required to borrow money in an approximate sum of $5,406,201.90. At a 4.5% interest rate, this amounted to $666.52 per day. From the period of December of 2020 through December of 2023, Plaintiff has therefore incurred losses in a sum of approximately $445,901.88 on interest due.

90. Plaintiff was additionally required to pay freight charges for shipping. From the period of March of 2021 through April of 2021, Plaintiff paid approximately $48,281.05 on freight from Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves to Plaintiff's warehouse in Fort Payne, Alabama. When Cintas returned the PPE-Aid nitrile gloves, Plaintiff was forced to incur an additional $38,320.00 in return freight charges, amounting to a total loss of approximately $86,601.05 in shipping alone.

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

91. Plaintiff has further sustained storage costs. From the period of approximately March of 2021 to September of 2022, Plaintiff paid for storage of 183 skids at a rate of $2.75 per week per skid, amounting to an initial storage cost of approximately $20,083.25. When Cintas returned the PPE-Aid nitrile gloves, Plaintiff was forced to incur additional storage costs for the returned non-conforming goods at Crane's warehouse, amounting to storage costs in a sum of approximately $21,553.00. In approximately March of 2021, the non-conforming PPE-Aid nitrile gloves were re-located to Plaintiff's warehouse, where Plaintiff incurred additional storage costs at $2.75 per week per skid for approximately eighty-two weeks through September of 2022, thereby amounting to storage costs in a sum of approximately $44,286.00. From the period of approximately October of 2021 through July of 2022, Plaintiff incurred additional storage costs on PPE-Aid nitrile gloves returned from Cintas and stored at Colortrim Plastics, LLC in the sum of approximately $23,750.00. In total, Plaintiff has incurred a loss of approximately $89,589.00 in storage costs alone.

92. From the period of approximately May of 2021 to September of 2023, Plaintiff has been required to pay liability insurance on Defendant WORLD TECH TOYS' non-conforming PPE-Aid nitrile gloves, amounting to a sum of approximately $23,931.00.

93. As a result of Defendant WORLD TECH TOYS' fraudulent misrepresentations and false advertising, Plaintiff has incurred actual damages in a sum no less than approximately $7,689,846.75.

94. As the Covid-19 pandemic has slowed since 2020, the need for immediate PPE equipment, such as Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves has decreased, and therefore Plaintiff has been left to warehouse and stock gloves comprised of phthalate plasticized PVC that has significantly decreased

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

in value.

95. Through Defendant INOV8, Plaintiff purchased the PPE-Aid nitrile gloves from Defendant WORLD TECH TOYS at a price point of approximately $14.85 per box.

96. Plaintiff sold Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves to Cintas at a price point of approximately $17.40 per box, thereby profiting approximately $2.55 per box.

97. To date, the current price point for which Plaintiff has been offered on other conforming goods that were not sold by Defendant WORLD TECH TOYS is approximately $3.50 per box, evidencing the drastic decline in supply and demand for PPE equipment since the height of the Covid-19 pandemic.

98. Accordingly, Plaintiff seeks compensatory and punitive damages for the losses Plaintiff has been forced to incur as a result of the fraudulent conduct of Defendant WORLD TECH TOYS.

### E. Damages Against Defendants INOV8, Safdeye, and Linker Incurred as a Result of the Non-Conforming Goods

99. As Defendants SAFDYE and LINKER sourced several various suppliers of the 100% nitrile gloves requested in order for Plaintiff to fulfill the multiple purchase orders from Cintas, the common practice of Defendants SAFDEYE and LINKER, by and through Defendant INOV8, was to source gloves, ascertain the number of boxes available from each supplier, and subsequently instruct Plaintiff to wire funds directly to Defendant INOV8 in order for Plaintiff to purchase the gloves.

100. This disorganized practice, as well as the heightened supply and demand at the time, resulted in a fast-paced business structure wherein time was of the essence, and upon sourcing gloves from a supplier, Defendants SAFDEYE and

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

LINKER would request funds to be wired immediately.

101.   In total, Plaintiff compensated Defendant INOV8 approximately $3,883,965.50, fulfilling Defendant INOV8's Invoice Nos. 1017 dated January 20, 2021, 1019 dated January 25, 2021, 1021 dated January 25, 2021, 1022 dated February 1, 2021, and 1019 dated February 16, 2021.

102.   Although Defendant INOV8 returned to Plaintiff the $3,154,140.00 for Plaintiff's purchase of 600,000 boxes of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves that Plaintiff was forced to possess and store, as well as an additional $318,417.50 for non-conforming goods from another supplier, Defendant INOV8 owed Plaintiff approximately $96,982.50 for shortages on Defendant INOV8's Invoice Nos. 1019, 1015, 1015, and 1016, amounting to a total owed to Plaintiff in the sum of approximately $508,390.50 on the total $3,883,965.50 Plaintiff paid to Defendant INOV8 after accounting for the monies returned.

103.   On or about February 19, 2021, Defendant SAFDEYE returned an additional $250,000 to Plaintiff, rendering the outstanding sum owed to Plaintiff approximately $258,390.50.

104.   When Plaintiff inquired as to when Plaintiff could expect to receive the remaining $258,390.50, Defendant SAFDEYE informed Plaintiff that he had, without Plaintiff's knowledge or authorization, sent the remaining outstanding balance to Defendant WORLD TECH TOYS for a deposit on 300,000 boxes of the PPE-Aid nitrile gloves.

105.   At no time did Plaintiff instruct Defendant SAFDEYE or Defendant LINKER to continue ordering the non-conforming PPE-Aid nitrile gloves from Defendant WORLD TECH TOYS, especially after sustaining massive financial losses in the return of the PPE-Aid nitrile gloves from Cintas.

106.   On information and belief, Plaintiff alleges that Defendant SAFDEYE

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

misrepresented the true circumstances of the outstanding balance owed to Plaintiff in the sum of approximately $258,390.50 and intends to withhold those funds from Plaintiff by leading Plaintiff to believe that Defendants INOV8, SAFDEYE, and LINKER no longer possess the funds.

107.   Accordingly, Plaintiff seeks compensatory and punitive damages for the losses Plaintiff has been forced to incur as a result of the fraudulent conduct of Defendants INOV8, SAFDEYE, and LINKER.

## FIRST CAUSE OF ACTION
### BREACH OF CONTRACT
### (Against Defendant WORLD TECH TOYS)

108.   Plaintiff hereby incorporates by reference each and all of the allegations contained in all paragraphs of this Complaint as though fully set forth within this Cause of Action.

109.   To recover damages from Defendant for breach of contract, Plaintiff must prove the following: (1) Plaintiff and Defendant entered into a contract, (2) Plaintiff completed all, or substantially all, of the material terms that the contract required Plaintiff to do, (3) Plaintiff was harmed, and (4) Defendant's breach of contract was a substantial factor in causing Plaintiff's harm.

110.   A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract. (Cal. Com. Code § 2204.)

111.   An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined. (*Id.*)

112.   Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy. (*Id.*)

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

113.   A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it. (Cal. Civ. Code § 1559.)

114.   It is not required that the third-party beneficiary specifically be named as a beneficiary in the contract. (*Martinez v. Socoma Companies, Inc.* (1974) 11 Cal.3d 394, 408.)

115.   Where a contract is made directly, or explicitly, for a third party, the third party is an express beneficiary to the contract entered into. (*Id.*)

116.   A third-party beneficiary contract must either satisfy an obligation of the promisee to pay money to the beneficiary, or the circumstances must indicate the promisee intends to provide the beneficiary the benefit of the promised performance. (*Medical Staff of Doctors Medical Center in Modesto v. Kamil* (2005) 132 Cal.App.4th 679, 685.)

117.   Commencing in approximately November of 2020, Defendant INOV8, acting as Plaintiff's agent, sourced PPE-Aid nitrile gloves from Defendant WORLD TECH TOYS for the sole purpose for Plaintiff to purchase gloves comprised of 100% nitrile.

118.   After receiving Defendant WORLD TECH TOYS' specification sheet for the PPE-Aid nitrile gloves and inspecting the PPE-Aid nitrile gloves in November of 2020, Plaintiff, through Defendant INOV8, placed an order with Defendant WORLD TECH TOYS for 160,000 boxes of the PPE-Aid nitrile gloves. Defendant accepted the order, thereby manifesting assent to enter into a contract wherein Plaintiff was a third-party beneficiary to the relationship between Defendant WORLD TECH TOYS and Defendant INOV8.

119.   The terms of this agreement obligated Defendant WORLD TECH TOYS to provide Plaintiff with 100% nitrile gloves, as represented and as marketed on both Defendant WORLD TECH TOYS' boxes and specification sheet.

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

120.   In consideration, Plaintiff, through Defendant INOV8, compensated Defendant WORLD TECH TOYS an approximate sum of $2,374,663.50.

121.   After receiving the first shipment from Defendant WORLD TECH TOYS, Plaintiff, through Defendant INOV8, placed a second order for 600,000 boxes of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves in January of 2019.

122.   In confirming that the second order of PPE-Aid nitrile gloves were comprised of 100% nitrile, Defendant WORLD TECH TOYS represented to Defendant INOV8 that the PPE-Aid nitrile gloves were 100% nitrile.

123.   In consideration for the second order, Plaintiff, through Defendant INOV8, compensated Defendant WORLD TECH TOYS an approximate sum of $5,293,431.00, in addition to providing a 20% deposit as requested by Defendant WORLD TECH TOYS.

124.   Defendant WORLD TECH TOYS materially breached the agreement because the PPE-Aid nitrile gloves were not 100% per nitrile, but rather, were comprised of phthalate plasticized PVC.

125.   Defendant WORLD TECH TOYS misrepresented to Plaintiff the true composition of the PPE-Aid nitrile gloves for purchase by advertising the PPE-Aid nitrile gloves as nitrile and by providing specification sheets that identified the PPE-Aid nitrile gloves to be comprised of nitrile.

126.   Plaintiff performed all conditions and obligations under the agreement by compensating Defendant WORLD TECH TOYS, through Defendant INOV8, a total sum of approximately $5,406,201.90.

127.   Defendant WORLD TECH TOYS' breach of the agreement was a substantial, if not the only, factor in causing Plaintiff's harm, because Plaintiff had requested product comprised of 100% nitrile and Defendant WORLD TECH TOYS failed to meet its obligations. When it was discovered that the

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

PPE-Aid nitrile gloves purchased from Defendant WORLD TECH TOYS were not comprised of 100% nitrile, Plaintiff sustained massive financial losses as a result of returns of the non-conforming product, interest rate on the non-conforming product that Plaintiff could no longer sell, shipping costs, and costs of storage to warehouse the non-conforming product that Plaintiff could no longer sell.

128.   As a further direct and proximate result of Defendant WORLD TECH TOYS' breach of the agreement, Plaintiff incurred potential liability as Defendant WORLD TECH TOYS' material breach rendered Plaintiff in breach of the Cintas Purchase Agreement, as Plaintiff had failed to provide gloves comprised of 100% nitrile as obligated.

129.   As a result of Defendant WORLD TECH TOYS' material breach, Plaintiff has been damaged in a sum according to proof, but in no event less than the jurisdictional minimum of this Court.

## SECOND CAUSE OF ACTION
### BREACH OF IMPLIED CONTRACT
### (Against Defendants INOV8, SAFDEYE, and LINKER)

130.   Plaintiff hereby incorporates by reference each and all of the allegations contained in all paragraphs of this Complaint as though fully set forth within this Cause of Action.

131.   To recover damages from Defendant for breach of contract, Plaintiff must prove the following: (1) Plaintiff and Defendant entered into a contract, (2) Plaintiff completed all, or substantially all, of the material terms that the contract required Plaintiff to do, (3) Plaintiff was harmed, and (4) Defendant's breach of contract was a substantial factor in causing Plaintiff's harm.

132.   The existence of an implied contract is manifested by conduct: the

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

difference lies not in legal effect, but merely in the mode of manifesting assent. (*Green Valley Landowners Assn. v. City of Vallejo* (2015) Cal.App.4th 425, 433.)

133.   Commencing in approximately November of 2020, Plaintiff entered into an agreement with Defendant INOV8, acting as Plaintiff's agent. The terms of this agreement obligated Defendant INOV8 to source gloves comprised of 100% nitrile for Plaintiff.

134.   In exchange, Plaintiff compensated Defendant INOV8 for purchase of the product sourced, as well as providing compensation to Defendant LINKER as a commission fee.

135.   Per this agreement, Defendant INOV8 sourced PPE-Aid nitrile gloves from Defendant WORLD TECH TOYS.

136.   On or about November 24, 2020, Defendant LINKER informed Plaintiff that Defendant WORLD TECH TOYS had 160,000 boxes of PPE-Aid nitrile gloves available. In the same email, Defendant LINKER included a test report dated September 25, 2019, that purported to be results of a test that had been conducted to ascertain the exact composition of the PPE-Aid nitrile gloves from Defendant WORLD TECH TOYS. Accordingly, Plaintiff, through Defendant INOV8, placed an order for the PPE-Aid nitrile gloves.

137.   To effectuate this order for Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves, Plaintiff received an invoice from Defendant INOV8 on or about November 24, 2020 for a total balance of $1,485,000.00, which Plaintiff submitted payment for upon receipt.

138.   After receiving the first shipment from Defendant WORLD TECH TOYS, Plaintiff, through Defendant INOV8, placed a second order for 600,000 boxes of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves in January of 2019.

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

139.   In confirming that Defendant WORLD TECH TOYS possessed enough of the PPE-Aid nitrile gloves to fulfill Plaintiff's order, Defendant LINKER informed Plaintiff that Defendant WORLD TECH TOYS would require a 20% deposit on 600,000 boxes of the PPE-Aid nitrile gloves, amounting to a total deposit in the sum of approximately $1,782,000.00, paid by Plaintiff to Defendant INOV8.

140.   In confirming that this order of PPE-Aid nitrile gloves was 100% nitrile, Defendant SAFDYE informed Plaintiff that the vendor, Defendant WORLD TECH TOYS, certified that the PPE-Aid nitrile gloves were 100% nitrile.

141.   To effectuate this additional order from Cintas for Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves, Plaintiff sent Defendant INOV8 $1,095,397.90 on or about January 20, 2021.

142.   Per the agreement with Plaintiff, Defendants INOV8, SAFDEYE, and LINKER were obligated to source and provide Plaintiff with gloves comprised of 100% nitrile.

143.   Defendants INOV8, SAFDEYE, and LINKER materially breached the agreement because the PPE-Aid nitrile gloves sourced from Defendant WORLD TECH TOYS were not 100% nitrile, but rather, were comprised of phthalate plasticized PVC.

144.   Plaintiff performed all conditions and obligations under the agreement by compensating Defendant INOV8 a total sum of approximately $5,406,201.90.

145.   The breach of the agreement by Defendants INOV8, SAFDEYE, and LINKER was a substantial, if not the only, factor in causing Plaintiff's harm, because Plaintiff had requested that Defendants INOV8, SAFDEYE, and LINKER source and provide Plaintiff with product comprised of 100% nitrile and subsequently failed to do so. When it was discovered that the PPE-Aid nitrile gloves purchased from Defendant WORLD TECH TOYS and sourced

by Defendants INOV8, SAFDEYE, and LINKER were not comprised of 100% nitrile, Plaintiff sustained massive financial losses as a result of returns of the non-conforming product, interest rate on the non-conforming product that Plaintiff could no longer sell, shipping costs, and costs of storage to warehouse the non-conforming product that Plaintiff could no longer sell.

146.  As a further direct and proximate result of the breach of the agreement by Defendants INOV8, SAFDEYE, and LINKER, Plaintiff incurred potential liability as the material breach rendered Plaintiff in breach of the Cintas Purchase Agreement, as Plaintiff had failed to provide gloves comprised of 100% nitrile as obligated.

147.  As a result of the material breach by Defendants INOV8, SAFDEYE, and LINKER, Plaintiff has been damaged in a sum according to proof, but in no event less than the jurisdictional minimum of this Court.

## THIRD CAUSE OF ACTION

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against Defendant WORLD TECH TOYS)

148.  Plaintiff hereby incorporates by reference each and all of the allegations contained in all paragraphs of this Complaint as though fully set forth within this Cause of Action.

149.  "The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." (*Guz v. Bechtel Nat. Inc.* (2000) 24 Cal.4th 317, 349.)

150.  The covenant imposes on contracting parties the duty to refrain from doing anything that would render performance of the contract impossible, while additionally imposing the duty to do everything that the party presupposes each

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

party will do to accomplish its purpose. (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49.)

151.  Defendant WORLD TECH TOYS engaged in a conduct which frustrated Plaintiff's rights to the benefit of the contract by falsely and fraudulently representing to Plaintiff that the PPE-Aid nitrile gloves were comprised of 100% nitrile.

152.  When Plaintiff, through Defendant INOV8, first contacted Defendant WORLD TECH TOYS in approximately November of 2020, Defendant WORLD TECH TOYS provided Plaintiff with a test report dated September 25, 2019 that purported to be results of a test that had been conducted to ascertain the exact composition of the PPE-Aid nitrile gloves.

153.  The boxes of Defendant WORLD TECH TOYS' PPE-Aid gloves specifically stated: "nitrile gloves," and were shipped in boxes containing Defendant WORLD TECH TOYS' company logo.

154.  On information and belief, Defendant WORLD TECH TOYS specifically represented to Plaintiff, through Defendant SAFDEYE that the PPE-Aid nitrile gloves were 100% nitrile.

155.  Defendant WORLD TECH TOYS further provided Plaintiff with an additional specification sheet that identified the PPE-Aid nitrile gloves as nitrile, FDA approved, and exam grade, and included a test report dated October 6, 2020 describing the PPE-Aid nitrile gloves as "nitrile."

156.  The agreement between Plaintiff and Defendant WORLD TECH TOYS obligated Defendant WORLD TECH TOYS to provide gloves comprised of 100% nitrile.

157.  As Defendant WORLD TECH TOYS was the supplier of the PPE-Aid nitrile gloves and specifically marketed the PPE-Aid gloves with Defendant WORLD TECH TOYS' logo, Defendant WORLD TECH TOYS knew or

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

should have known that the PPE-Aid nitrile gloves were not 100% nitrile, but rather, were comprised of phthalate plasticized PVC.

158.   By representing and marketing the PPE-Aid nitrile gloves as 100% nitrile, Defendant WORLD TECH TOYS rendered performance of the agreement impossible, as Defendant WORLD TECH TOYS could not provide Plaintiff with gloves comprised of 100% nitrile.

159.   By representing and marketing the PPE-Aid nitrile gloves as 100% nitrile, Defendant WORLD TECH TOYS acted in bad faith and in violation of the implied covenant of good faith and fair dealing.

160.   Defendant WORLD TECH TOYS' breach of the implied covenant of good faith and fair dealing was a substantial, if not the only, factor in causing Plaintiff's harm. When it was discovered that the PPE-Aid nitrile gloves were not comprised of 100% nitrile, Plaintiff sustained massive financial losses as a result of returns of the non-conforming product, interest rate on the non-conforming product that Plaintiff could no longer sell, shipping costs, and costs of storage to warehouse the non-conforming product that Plaintiff could no longer sell.

161.   The acts and conduct of Defendant constitute "malice" as defined in Cal. Code of Civ. Pr. § 3294(c)(1) in that it was intended by Defendant to cause injury to Plaintiff or was despicable conduct which was carried on by Defendant with a willful and conscious disregard of the rights or safety of Plaintiff. The acts of Defendant were conducted fraudulently, maliciously, and oppressively and with the advance knowledge, conscious disregard, authorization, ratification, or act of oppression, within the meaning of Cal. Code of Civ. Pr. § 3294. The actions and conduct of Defendant were intended to cause injury to Plaintiff with the intention to deprive Plaintiff of property and legal rights, justifying an award of exemplary and punitive damages in an

amount according to proof.

## FOURTH CAUSE OF ACTION

### FRAUD IN THE INDUCEMENT

### Count One

### (Against Defendant WORLD TECH TOYS)

162.   Plaintiff hereby incorporates by reference each and all of the allegations contained in all paragraphs of this Complaint as though fully set forth within this Cause of Action.

163.   Fraudulent inducement is proven by demonstrating: (1) concealment of a material fact, (2) that the defendant had a duty to disclose, (3) the defendant intentionally concealed the fact with the intent to defraud, (4) the plaintiff must have been unaware of the fact and would not have acted as he did had the fact been disclosed, and (5) the plaintiff sustained damages as a result. (*Dienes v. FCA US LLC*, 2018 WL 1258188, at *1 (S.D.Cal., 2018).)

164.   A contract may be voidable where the contract was entered into as a result of fraud in the inducement. (*Najarro v. Superior Court* (2021) 70 Cal.App.5th 871, 889.)

165.   A relationship giving rise to the duty to disclose a material fact is present where some sort of transaction exists between the parties, such as a seller-buyer relationship, an employer and prospective employee relationship, a doctor-patient relationship, or parties entering into any contractual agreement. (*Hoffman v. 162 North Wolfe LLC* (2014) 228 Cal.App.4th 1178, 1187.)

166.   Defendant WORLD TECH TOYS concealed from Plaintiff the fact that the PPE-Aid nitrile gloves were not comprised of 100% nitrile.

167.   As the seller of the PPE-Aid nitrile gloves, Defendant WORLD TECH TOYS had a duty to disclose the true composition of the PPE-Aid nitrile

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

gloves to Plaintiff, who placed multiple large orders for the PPE-Aid nitrile gloves.

168.    Defendant WORLD TECH TOYS was aware of its obligation to Plaintiff to provide gloves comprised of 100% nitrile, as Plaintiff, through Defendant INOV8, confirmed that the PPE-Aid nitrile gloves were 100% nitrile with Defendant WORLD TECH TOYS on several occasions.

169.    When Plaintiff, through Defendant INOV8, first contacted Defendant WORLD TECH TOYS in approximately November of 2020, Defendant WORLD TECH TOYS provided Plaintiff with a test report dated September 25, 2019 that purported to be results of a test that had been conducted to ascertain the exact composition of the PPE-Aid nitrile gloves.

170.    The boxes of Defendant WORLD TECH TOYS' PPE-Aid gloves specifically stated: "nitrile gloves," and were shipped in boxes containing Defendant WORLD TECH TOYS' company logo.

171.    Defendant WORLD TECH TOYS further provided Plaintiff with an additional specification sheet that identified the PPE-Aid nitrile gloves as nitrile, FDA approved, and exam grade, and included a test report dated October 6, 2020 describing the PPE-Aid nitrile gloves as "nitrile."

172.    At no time did Defendant WORLD TECH TOYS apprise Plaintiff of the fact that the PPE-Aid nitrile gloves were not, in fact, 100% nitrile.

173.    Defendant WORLD TECH TOYS intentionally concealed the true composition of the PPE-Aid nitrile gloves with the intent to defraud Plaintiff and induce Plaintiff into purchasing the PPE-Aid nitrile gloves, believing them to be comprised of 100% nitrile.

174.    Accordingly, Plaintiff placed one order for purchase of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves in November of 2020 for a total of 160,000 boxes in the sum of approximately $2,374,663.50.

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

175.   Plaintiff additionally placed a second order for purchase of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves in January of 2021 for a total of 600,000 boxes in the sum of approximately $5,293,431.00.

176.    Had Plaintiff been aware that the PPE-Aid nitrile gloves were comprised of phthalate plasticized PVC and not nitrile, Plaintiff would not have purchased the PPE-Aid nitrile gloves from Defendant WORLD TECH TOYS.

177.   Defendant WORLD TECH TOYS' fraudulent inducement was a substantial, if not the only, factor in causing Plaintiff's harm. When it was discovered that the PPE-Aid nitrile gloves were not comprised of 100% nitrile, Plaintiff sustained massive financial losses as a result of returns of the non-conforming product, interest rate on the non-conforming product that Plaintiff could no longer sell, shipping costs, and costs of storage to warehouse the non-conforming product that Plaintiff could no longer sell.

178.   The acts and conduct of Defendant constitute "malice" as defined in Cal. Code of Civ. Pr. § 3294(c)(1) in that it was intended by Defendant to cause injury to Plaintiff or was despicable conduct which was carried on by Defendant with a willful and conscious disregard of the rights or safety of Plaintiff. The acts of Defendant were conducted fraudulently, maliciously, and oppressively and with the advance knowledge, conscious disregard, authorization, ratification, or act of oppression, within the meaning of Cal. Code of Civ. Pr. § 3294. The actions and conduct of Defendant were intended to cause injury to Plaintiff with the intention to deprive Plaintiff of property and legal rights, justifying an award of exemplary and punitive damages in an amount according to proof.

///

///

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

# FOURTH CAUSE OF ACTION

## FRAUD IN THE INDUCEMENT

### Count Two

### (Against Defendants INOV8, SAFDEYE, and LINKER)

179.   Plaintiff hereby incorporates by reference each and all of the allegations contained in all paragraphs of this Complaint as though fully set forth within this Cause of Action.

180.   Fraudulent inducement is proven by demonstrating: (1) concealment of a material fact, (2) that the defendant had a duty to disclose, (3) the defendant intentionally concealed the fact with the intent to defraud, (4) the plaintiff must have been unaware of the fact and would not have acted as he did had the fact been disclosed, and (5) the plaintiff sustained damages as a result. (*Dienes v. FCA US LLC*, 2018 WL 1258188, at *1 (S.D.Cal., 2018).)

181.   A contract may be voidable where the contract was entered into as a result of fraud in the inducement. (*Najarro v. Superior Court* (2021) 70 Cal.App.5th 871, 889.)

182.   A relationship giving rise to the duty to disclose a material fact is present where some sort of transaction exists between the parties, such as a seller-buyer relationship, an employer and prospective employee relationship, a doctor-patient relationship, or parties entering into any contractual agreement. (*Hoffman v. 162 North Wolfe LLC* (2014) 228 Cal.App.4th 1178, 1187.)

183.   Upon cancellation and return of all non-conforming PPE-Aid nitrile gloves purchased from Defendant WORLD TECH TOYS, Plaintiff requested that Defendant INOV8 return all money paid by Plaintiff for all outstanding orders of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves that had not yet been delivered to Cintas. In response, Defendant SAFDEYE informed Plaintiff that he had already transferred the funds to Defendant WORLD TECH TOYS

and that Defendant WORLD TECH TOYS would not refund. Defendant SAFDEYE stated that Defendant WORLD TECH TOYS owed money to the bank and that the bank would take possession of the PPE-Aid gloves if Plaintiff did not. Accordingly, Plaintiff was left with no choice but to have the outstanding orders shipped directly to Plaintiff's warehouse. The sum paid to Defendant INOV8 for these outstanding shipments was approximately $3,154,140.00, calculated by 212,400 boxes of PPE-Aid nitrile gloves at Plaintiff's purchase price of $14.85 per box.

184.   Subsequently, Defendants SAFDEYE and LINKER sent Plaintiff a Settlement Agreement to be executed by Plaintiff and Defendant INOV8.

185.   The Settlement Agreement, dated March 4, 2021, purported to release Defendant INOV8 from any liabilities relating to certain non-conforming products that Defendant INOV8 purchased on behalf of Plaintiff.

186.   Specifically, the Settlement Agreement provided that Plaintiff would not be required to take delivery on product ordered from Defendant INOV8, and further, that Plaintiff acknowledged that Defendant INOV8 was required to deposit funds toward certain orders and that *if* Defendant INOV8 was able to recover any sum of the deposits paid, Defendant INOV8 would return the funds to Plaintiff.

187.   The Settlement Agreement specified that Defendant INOV8 had paid a total deposit amount of approximately $1,665,725.00, however, the Settlement Agreement did not mandate that Defendant INOV8 return any funds to Plaintiff unless such funds were recovered by Defendant INOV8.

188.   Defendants INOV8, SAFDEYE, and LINKER concealed from Plaintiff their intent to induce Plaintiff into signing the Settlement Agreement for the sole purpose of withholding funds from Plaintiff as a result of the return of the fraudulent and non-conforming PPE-Aid nitrile gloves purchased from

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

Defendant WORLD TECH TOYS.

189.  Plaintiff, on one hand, and Defendants INOV8, SAFDEYE, and LINKER, on the other, were engaged in an ongoing contractual relationship wherein Defendants INOV8, SAFDEYE, and LINKER, acting on behalf of and as agents of Plaintiff, sourced gloves comprised of 100% nitrile.

190.  This contractual relationship bound Defendants INOV8, SAFDEYE, and LINKER to a duty to disclose all material facts affecting Plaintiff or Plaintiff's rights.

191.  Defendants INOV8, SAFDEYE, and LINKER intentionally concealed their intent to withhold funds from Plaintiff that Plaintiff was entitled to as a result of the return of the non-conforming PPE-Aid nitrile gloves with the intent to induce Plaintiff into signing the Settlement Agreement, which purported to release Defendants INOV8, SAFDEYE, and LINKER from all liability relating to Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves.

192.  Defendants SAFDEYE and LINKER induced Plaintiff's execution of the Settlement Agreement by informing Plaintiff that Defendant INOV8 would recover Plaintiff's funds and further, that a third party would purchase the non-conforming goods but could not prior to execution of the Settlement Agreement.

193.  Defendant LINKER further induced Plaintiff's execution of the Settlement Agreement by informing Plaintiff that if Plaintiff did not sign, Plaintiff would lose the Shoe Show business. Despite the fact that Plaintiff did sign the Settlement Agreement, Defendant LINKER, on information and belief, subsequently transferred the entire Shoe Show business into Defendant SAFDEYE's other company, Majesty Brands, without Plaintiff's knowledge or authorization, resulting in Plaintiff losing the Shoe Show business. Plaintiff possessed approximately $3,000,000.00 in inventory that was subsequently

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

transferred to Majesty Brands.

194.   Had Plaintiff been aware of the true intent of Defendants INOV8, SAFDEYE, and LINKER, Plaintiff would not have signed the Settlement Agreement.

195.   The fraudulent inducement of Defendants INOV8, SAFDEYE, and LINKER was a substantial, if not the only, factor in causing Plaintiff's harm. When it was discovered that the PPE-Aid nitrile gloves were not comprised of 100% nitrile, Plaintiff sustained massive financial losses as a result of returns of the non-conforming product, interest rate on the non-conforming product that Plaintiff could no longer sell, shipping costs, and costs of storage to warehouse the non-conforming product that Plaintiff could no longer sell.

196.   Accordingly, Plaintiff sought to recover these losses by attempting to recover the money Plaintiff had paid to Defendant INOV8 for purchase of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves in the sum of approximately $3,154,140.00.

197.   Defendants INOV8, SAFDEYE, and LINKER, however, sought to capitalize off of Plaintiff's losses and hastily induced Plaintiff to sign the Settlement Agreement so that Defendants INOV8, SAFDEYE, and LINKER would not be obligated to return any funds owed to Plaintiff.

198.   In total, Plaintiff compensated Defendant INOV8 approximately $3,883,965.50, fulfilling Defendant INOV8's Invoice Nos. 1017 dated January 20, 2021, 1019 dated January 25, 2021, 1021 dated January 25, 2021, 1022 dated February 1, 2021, and 1019 dated February 16, 2021.

199.   Although Defendant INOV8 returned to Plaintiff the $3,154,140.00 for Plaintiff's purchase of 600,000 boxes of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves that Plaintiff was forced to possess and store, as well as an additional $318,417.50 for non-conforming goods from another supplier,

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

Defendant INOV8 owed Plaintiff approximately $96,982.50 for shortages on Defendant INOV8's Invoice Nos. 1019, 1015, 1015, and 1016, amounting to a total owed to Plaintiff in the sum of approximately $508,390.50 on the total $3,883,965.50 Plaintiff paid to Defendant INOV8 after accounting for the monies returned.

200.   On or about February 19, 2021, Defendant SAFDEYE returned an additional $250,000 to Plaintiff, rendering the outstanding sum owed to Plaintiff approximately $258,390.50.

201.   When Plaintiff inquired as to when Plaintiff could expect to receive the remaining $258,390.50, Defendant SAFDEYE informed Plaintiff that he had, without Plaintiff's knowledge or authorization, sent the remaining outstanding balance to Defendant WORLD TECH TOYS for a deposit on 300,000 boxes of the PPE-Aid nitrile gloves.

202.   At no time did Plaintiff instruct Defendant SAFDEYE or Defendant LINKER to continue ordering the non-conforming PPE-Aid nitrile gloves from Defendant WORLD TECH TOYS, especially after sustaining massive financial losses in the return of the PPE-Aid nitrile gloves from Cintas.

203.   On information and belief, Plaintiff alleges that Defendant SAFDEYE misrepresented the true circumstances of the outstanding balance owed to Plaintiff in the sum of approximately $258,390.50 and intends to withhold those funds from Plaintiff by leading Plaintiff to believe that Defendants INOV8, SAFDEYE, and LINKER no longer possess the funds.

204.   The Settlement Agreement executed on or about March 4, 2021 is further voidable due to the fraudulent inducements of Defendants INOV8, SAFDEYE, and LINKER, entitling Plaintiff to recover the entire sum to which Plaintiff is owed.

205.   The acts and conduct of Defendants constitute "malice" as defined in Cal.

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

Code of Civ. Pr. § 3294(c)(1) in that it was intended by Defendants to cause injury to Plaintiff or was despicable conduct which was carried on by Defendants with a willful and conscious disregard of the rights or safety of Plaintiff. The acts of Defendants were conducted fraudulently, maliciously, and oppressively and with the advance knowledge, conscious disregard, authorization, ratification, or act of oppression, within the meaning of Cal. Code of Civ. Pr. § 3294. The actions and conduct of Defendants were intended to cause injury to Plaintiff with the intention to deprive Plaintiff of property and legal rights, justifying an award of exemplary and punitive damages in an amount according to proof.

## FIFTH CAUSE OF ACTION
### INTENTIONAL MISREPRESENTATION
**(Against All Defendants)**

206.   Plaintiff hereby incorporates by reference each and all of the allegations contained in all paragraphs of this Complaint as though fully set forth within this Cause of Action.

207.   To prove a claim for intentional misrepresentation, a plaintiff must demonstrate: (1) a misrepresentation, (2) knowledge of its falsity, (3) made with the intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damages. (*Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217, 230-31.)

208.   Reliance exists where the misrepresentation immediately caused plaintiff's conduct which altered the plaintiff's legal relations and where without such misrepresentation, the plaintiff would not have entered into the contract or transaction. (*Manderville v. PCG&S Group, Inc.* (2007) 146 Cal.App.4th 1486, 1498.)

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

209.   A plaintiff's negligence in failing to discover the falsity of a statement is not a defense where the misrepresentation was intentional. (*Id.*)

210.   All times described herein, Defendant WORLD TECH TOYS represented to Plaintiff, through Defendant INOV8, that the PPE-Aid nitrile gloves were comprised of 100% nitrile.

211.   Defendants INOV8, SAFDEYE, and LINKER further perpetrated this misrepresentation by providing Plaintiff with multiple specification sheets from Defendant WORLD TECH TOYS and by attempting to convince Plaintiff that the misrepresentation made by Defendant WORLD TECH TOYS was not made in bad faith.

212.   On or about November 24, 2020, Defendant LINKER provided Plaintiff with a test report dated September 25, 2019 that purported to be results of a test that had been conducted to ascertain the exact composition of the PPE-Aid nitrile gloves from Defendant WORLD TECH TOYS.

213.   The boxes of Defendant WORLD TECH TOYS' PPE-Aid gloves specifically stated: "nitrile gloves," and were shipped in boxes containing Defendant WORLD TECH TOYS' company logo.

214.   Defendant WORLD TECH TOYS further provided Plaintiff with an additional specification sheet that identified the PPE-Aid nitrile gloves as nitrile, FDA approved, and exam grade, and included a test report dated October 6, 2020 describing the PPE-Aid nitrile gloves as "nitrile."

215.   Defendant WORLD TECH TOYS intentionally misrepresented the true composition of the PPE-Aid nitrile gloves with the intent to defraud Plaintiff and induce Plaintiff into purchasing the PPE-Aid nitrile gloves, believing them to be comprised of 100% nitrile.

216.   As Defendant WORLD TECH TOYS was the supplier of the PPE-Aid nitrile gloves and specifically marketed the PPE-Aid gloves with Defendant

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

WORLD TECH TOYS' logo, Defendant WORLD TECH TOYS knew or should have known that the PPE-Aid nitrile gloves were not 100% nitrile, but rather, were comprised of phthalate plasticized PVC.

217.   Accordingly, Plaintiff placed one order for purchase of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves in November of 2020 for a total of 160,000 boxes in the sum of approximately $2,374,663.50.

218.   Plaintiff additionally placed a second order for purchase of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves in January of 2021 for a total of 600,000 boxes in the sum of approximately $5,293,431.00.

219.   Had Plaintiff been aware that the PPE-Aid nitrile gloves were comprised of phthalate plasticized PVC and not nitrile, Plaintiff would not have purchased the PPE-Aid nitrile gloves from Defendant WORLD TECH TOYS.

220.   When it was discovered that the PPE-Aid nitrile gloves were comprised of phthalate plasticized PVC and were not 100% nitrile, Defendant LINKER sent Plaintiff a Bill of Lading from Feida Toys Co., Ltd., purportedly from Defendant WORLD TECH TOYS, concurrent with a text message that stated none of the PPE-Aid nitrile gloves were fake, "no one did anything wrong," "no one scammed us," and that the attached Bill of Lading proved that the PPE-Aid nitrile gloves were real.

221.   On or about March 10, 2021, Defendant LINKER sent Plaintiff a letter from the United States FDA dated November 30, 2018 that purportedly identified Hongray as the manufacturer of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves.

222.   On or about March 19, 2021, a representative on behalf of Plaintiff contacted Hongray, requesting confirmation that the brand PPE-Aid was comprised of 100% nitrile. Plaintiff received a response from Hongray the same day stating that the PPE-Aid brand was not manufactured by Hongray

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

and that it was counterfeit.

223.   Defendants INOV8, SAFDEYE, and LINKER intentionally misrepresented the true composition of the PPE-Aid nitrile gloves, as well as the true manufacturer of the PPE-Aid nitrile gloves, with the intent to defraud Plaintiff and induce Plaintiff into purchasing the PPE-Aid nitrile gloves, thereby generating profits and commission fees for Defendants INOV8, SAFDEYE, and LINKER.

224.   Had Plaintiff been aware that the PPE-Aid nitrile gloves were comprised of phthalate plasticized PVC and not nitrile, Plaintiff would not have purchased the PPE-Aid nitrile gloves from Defendant WORLD TECH TOYS.

225.   The fraudulent misrepresentation made by Defendants WORLD TECH TOYS, INOV8, SAFDEYE, and LINKER was a substantial, if not the only, factor in causing Plaintiff's harm. When it was discovered that the PPE-Aid nitrile gloves were not comprised of 100% nitrile, Plaintiff sustained massive financial losses as a result of returns of the non-conforming product, interest rate on the non-conforming product that Plaintiff could no longer sell, shipping costs, and costs of storage to warehouse the non-conforming product that Plaintiff could no longer sell.

226.   The acts and conduct of Defendants constitute "malice" as defined in Cal. Code of Civ. Pr. § 3294(c)(1) in that it was intended by Defendants to cause injury to Plaintiff or was despicable conduct which was carried on by Defendants with a willful and conscious disregard of the rights or safety of Plaintiff. The acts of Defendants were conducted fraudulently, maliciously, and oppressively and with the advance knowledge, conscious disregard, authorization, ratification, or act of oppression, within the meaning of Cal. Code of Civ. Pr. § 3294. The actions and conduct of Defendants were intended to cause injury to Plaintiff with the intention to deprive Plaintiff of property

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

and legal rights, justifying an award of exemplary and punitive damages in an amount according to proof.

## SIXTH CAUSE OF ACTION

### INTENTIONAL INTERFERENCE WITH CONTRACT
### (Against Defendants INOV8, SAFDEYE, and LINKER)

227.   Plaintiff hereby incorporates by reference each and all of the allegations contained in all paragraphs of this Complaint as though fully set forth within this Cause of Action.

228.   To prove a claim for intentional interference with contractual relations, a plaintiff must show: (1) a valid contract between the plaintiff and a third party, (2) defendant's knowledge of this contract, (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship, (4) actual breach or disruption, and (5) resulting damages. (*Mossimo Holdings, LLC v. Haralambus*, 2017 WL 1240739, at *5 (C.D.Cal., 2017).

229.   Plaintiff possessed a valid and existing contract with Cintas, governed by the Cintas Purchase Agreement dated October 30, 2020.

230.   Under the Cintas Purchase Agreement, Plaintiff was obligated to provide gloves comprised of 100% nitrile.

231.   Specifically, Cintas was to purchase the following from Plaintiff:
    A. Product: Powder Free, Disposable, Nitrile Gloves. Sizes: Small, Medium, Large, Extra Large.
    B. Product: Powder Free, Disposable, Nitrile Examination Gloves. Sizes: Small, Medium, Large, Extra Large.

232.   Defendants INOV8, SAFDEYE, and LINKER were aware that Plaintiff was a party to the Cintas Purchase Agreement, because Defendants SAFDEYE and LINKER, through Defendant INOV8, acted as agents of Plaintiff in sourcing suppliers of the 100% nitrile gloves in order for Plaintiff to fulfill the

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

multiple purchase orders from Cintas.

233.   Per standard procedure, Defendant INOV8 would obtain the specification sheet from each manufacturer of gloves sourced and would forward the specification sheet to Plaintiff, who would in turn forward it to Cintas for approval prior to finalizing the purchase.

234.   Defendants INOV8, SAFDEYE, and LINKER were further aware that the Cintas Purchase Agreement obligated Plaintiff to provide gloves comprised of 100% nitrile, because on each occasion on which gloves were sourced, Plaintiff requested confirmation that the gloves were 100% nitrile.

235.   Defendants SAFDEYE and LINKER, by and through Defendant INOV8, each with full knowledge of the Cintas Purchase Agreement, intentionally and maliciously interfered with Plaintiff's existing contract by representing to Plaintiff that Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves were 100% nitrile.

236.   On or about November 24, 2020, Defendant LINKER provided Plaintiff with a test report dated September 25, 2019 that purported to be results of a test that had been conducted to ascertain the exact composition of the PPE-Aid nitrile gloves from Defendant WORLD TECH TOYS.

237.   In confirming that Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves were 100% nitrile to meet the requirements under the Cintas Purchase Agreement, Defendant SAFDYE informed Plaintiff that the vendor, Defendant WORLD TECH TOYS, certified that the PPE-Aid nitrile gloves were 100% nitrile.

238.   On or about February 22, 2021, Plaintiff received an additional specification sheet from Defendant SAFDEYE for Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves. The additional specification sheet identified Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves as nitrile, FDA

approved, and exam grade, and further included a test report dated October 6, 2020 describing the PPE-Aid nitrile gloves as "nitrile."

239.   When it was discovered that the PPE-Aid nitrile gloves were comprised of phthalate plasticized PVC and were not 100% nitrile, Defendant LINKER sent Plaintiff a Bill of Lading from Feida Toys Co., Ltd., purportedly from Defendant WORLD TECH TOYS, concurrent with a text message that stated none of the PPE-Aid nitrile gloves were fake, "no one did anything wrong," "no one scammed us," and that the attached Bill of Lading proved that the PPE-Aid nitrile gloves were real.

240.   On or about March 10, 2021, Defendant LINKER sent Plaintiff a letter from the United States FDA dated November 30, 2018 that purportedly identified Hongray as the manufacturer of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves.

241.   On or about March 19, 2021, a representative on behalf of Plaintiff contacted Hongray, requesting confirmation that the brand PPE-Aid was comprised of 100% nitrile. Plaintiff received a response from Hongray the same day stating that the PPE-Aid brand was not manufactured by Hongray and that it was counterfeit.

242.   On or about November 15, 2021, Plaintiff contacted Mr. Kouyoumijan, informing Mr. Kouyoumijan of the test results Plaintiff had received regarding the PPE-Aid nitrile gloves. In response, Mr. Kouyoumijan requested that Plaintiff forward the specification sheet received from Defendant SAFDEYE. In a telephone conversation between Plaintiff and Mr. Kouyoumijan shortly thereafter, Mr. Kouyoumijan informed Plaintiff that Defendant SAFDEYE was aware that the PPE-Aid nitrile gloves were not 100% nitrile.

243.   At all times herein, Defendants SAFDEYE and LINKER, by and through Defendant INOV8, represented to Plaintiff that the PPE-Aid nitrile gloves were

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

comprised of 100% nitrile, thereby inducing Plaintiff to purchase large quantities of the PPE-Aid nitrile gloves, which led to profits for Defendant INOV8.

244.   The acts of Defendants SAFDEYE and LINKER, by and through Defendant INOV8, were intentionally designed to disrupt Plaintiff's contractual relationship with Cintas, at the sole expense of Plaintiff and for the sole benefit of Defendants INOV8, SAFDEYE, and LINKER.

245.   Actual disruption of the Cintas Purchase Agreement did occur, as when it was discovered that the PPE-Aid nitrile gloves were not comprised of 100% nitrile, Cintas, per its authority under the Cintas Purchase Agreement, cancelled and returned the non-conforming PPE-Aid nitrile gloves.

246.   On or about February 24, 2021, Plaintiff received an email from Cintas confirming that all pending orders of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves were cancelled.

247.   Cintas additionally requested to be credited for all of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves that Cintas was returning and informed Plaintiff that Cintas would not pay any outstanding invoices until all credits were issued for the non-conforming PPE-Aid nitrile gloves.

248.   Cintas thereafter returned all of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves that were shipped in January and February of 2021, plus an additional 7,594 boxes of the first purchase order made on or about December 2, 2020, amounting to a total of 151,654 boxes returned to Plaintiff and a loss sustained by Plaintiff at a sum of $2,252,061.90, calculated by 151,654 boxes at Plaintiff's purchase price of $14.85 per box.

249.   When Plaintiff requested that Defendant INOV8 return all money paid by Plaintiff for all outstanding orders of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves that had not yet been delivered to Cintas, Defendant

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SAFDEYE informed Plaintiff that he had already transferred the funds to Defendant WORLD TECH TOYS and that Defendant WORLD TECH TOYS would not refund. Defendant SAFDEYE stated that Defendant WORLD TECH TOYS owed money to the bank and that the bank would take possession of the PPE-Aid gloves if Plaintiff did not. Accordingly, Plaintiff was left with no choice but to have the outstanding orders shipped directly to Plaintiff's warehouse. The sum paid to Defendant INOV8 for these outstanding shipments was approximately $3,154,140.00, calculated by 212,400 boxes of PPE-Aid nitrile gloves at Plaintiff's purchase price of $14.85 per box.

250.    As a direct and proximate result of the intentional interference with Plaintiff's existing contract with Cintas, Plaintiff sustained massive financial losses as a result of returns of the non-conforming product, interest rate on the non-conforming product that Plaintiff could no longer sell, shipping costs, and costs of storage to warehouse the non-conforming product that Plaintiff could no longer sell.

251.    Accordingly, Plaintiff has suffered damages in a sum to be shown according to proof, but in no event less than the jurisdictional minimum of this Court.

252.    The acts and conduct of Defendants constitute "malice" as defined in Cal. Code of Civ. Pr. § 3294(c)(1) in that it was intended by Defendants to cause injury to Plaintiff or was despicable conduct which was carried on by Defendants with a willful and conscious disregard of the rights or safety of Plaintiff. The acts of Defendants were conducted fraudulently, maliciously, and oppressively and with the advance knowledge, conscious disregard, authorization, ratification, or act of oppression, within the meaning of Cal. Code of Civ. Pr. § 3294. The actions and conduct of Defendants were intended to cause injury to Plaintiff with the intention to deprive Plaintiff of property

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

and legal rights, justifying an award of exemplary and punitive damages in an amount according to proof.

## SEVENTH CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

### (Against Defendants INOV8, SAFDEYE, and LINKER)

253.   Plaintiff hereby incorporates by reference each and all of the allegations contained in all paragraphs of this Complaint as though fully set forth within this Cause of Action.

254.   To prove intentional interference with prospective economic advantage, a plaintiff must show: (1) an economic relationship between the plaintiff and a third party, with the probability of a future economic benefit to the plaintiff, (2) the defendant's knowledge of the relationship, (3) intentional acts on the part of the defendant designed to disrupt the relationship, (4) actual disruption of the relationship, and (5) economic harm sustained by the plaintiff caused by the defendant's acts. (*Marsh v. Anesthesia Servs. Med. Grp., Inc.* (2011) 200 Cal.App.4th 480, 504.)

255.   A defendant need not act with the specific intent or purpose of disrupting the plaintiff's prospective economic advantage, rather, it is sufficient that the defendant knew that interference was certain or substantially certain to occur as a result of the defendant's actions. (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153.)

256.   A plaintiff may prove intentional interference with prospective economic advantage by showing the defendant intentionally interfered with an existing contract, which courts have identified as "a wrong in and of itself," or alternatively, by showing the defendant engaged in an independently wrongful

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

act. (*Id.* at 1158.)

257.  Plaintiff had an existing, ongoing, and valuable business relationship with Cintas, and had a reasonable expectation that relationship would continue unless wrongfully interfered with. Defendants SAFDEYE and LINKER, by and through Defendant INOV8, were aware that Plaintiff was a party to the Cintas Purchase Agreement, because Defendants SAFDEYE and LINKER, through Defendant INOV8, acted as agents of Plaintiff in sourcing suppliers of the 100% nitrile gloves in order for Plaintiff to fulfill the multiple purchase orders from Cintas.

258.  Defendants SAFDEYE and LINKER, by and through Defendant INOV8, each with full knowledge of the Cintas Purchase Agreement, intentionally and maliciously interfered with Plaintiff's existing contract by representing to Plaintiff that Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves were 100% nitrile.

259.  Per standard procedure, Defendant INOV8 would obtain the specification sheet from each manufacturer of gloves sourced and would forward the specification sheet to Plaintiff, who would in turn forward it to Cintas for approval prior to finalizing the purchase.

260.  Defendants INOV8, SAFDEYE, and LINKER were further aware that the Cintas Purchase Agreement obligated Plaintiff to provide gloves comprised of 100% nitrile, because on each occasion on which gloves were sourced, Plaintiff requested confirmation that the gloves were 100% nitrile.

261.  Defendants SAFDEYE and LINKER, by and through Defendant INOV8, each with full knowledge of the Cintas Purchase Agreement, intentionally and maliciously interfered with Plaintiff's existing contract by representing to Plaintiff that Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves were 100% nitrile.

262.   On or about November 24, 2020, Defendant LINKER provided Plaintiff with a test report dated September 25, 2019 that purported to be results of a test that had been conducted to ascertain the exact composition of the PPE-Aid nitrile gloves from Defendant WORLD TECH TOYS.

263.   In confirming that Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves were 100% nitrile to meet the requirements under the Cintas Purchase Agreement, Defendant SAFDYE informed Plaintiff that the vendor, Defendant WORLD TECH TOYS, certified that the PPE-Aid nitrile gloves were 100% nitrile.

264.   On or about February 22, 2021, Plaintiff received an additional specification sheet from Defendant SAFDEYE for Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves. The additional specification sheet identified Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves as nitrile, FDA approved, and exam grade, and further included a test report dated October 6, 2020 describing the PPE-Aid nitrile gloves as "nitrile."

265.   When it was discovered that the PPE-Aid nitrile gloves were comprised of phthalate plasticized PVC and were not 100% nitrile, Defendant LINKER sent Plaintiff a Bill of Lading from Feida Toys Co., Ltd., purportedly from Defendant WORLD TECH TOYS, concurrent with a text message that stated none of the PPE-Aid nitrile gloves were fake, "no one did anything wrong," "no one scammed us," and that the attached Bill of Lading proved that the PPE-Aid nitrile gloves were real.

266.   On or about March 10, 2021, Defendant LINKER sent Plaintiff a letter from the United States FDA dated November 30, 2018 that purportedly identified Hongray as the manufacturer of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves.

267.   On or about March 19, 2021, a representative on behalf of Plaintiff

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

contacted Hongray, requesting confirmation that the brand PPE-Aid was comprised of 100% nitrile. Plaintiff received a response from Hongray the same day stating that the PPE-Aid brand was not manufactured by Hongray and that it was counterfeit.

268.    On or about November 15, 2021, Plaintiff contacted Mr. Kouyoumijan, informing Mr. Kouyoumijan of the test results Plaintiff had received regarding the PPE-Aid nitrile gloves. In response, Mr. Kouyoumijan requested that Plaintiff forward the specification sheet received from Defendant SAFDEYE. In a telephone conversation between Plaintiff and Mr. Kouyoumijan shortly thereafter, Mr. Kouyoumijan informed Plaintiff that Defendant SAFDEYE was aware that the PPE-Aid nitrile gloves were not 100% nitrile.

269.    At all times herein, Defendants SAFDEYE and LINKER, by and through Defendant INOV8, represented to Plaintiff that the PPE-Aid nitrile gloves were comprised of 100% nitrile, thereby inducing Plaintiff to purchase large quantities of the PPE-Aid nitrile gloves, which led to profits for Defendant INOV8.

270.    The acts of Defendants SAFDEYE and LINKER, by and through Defendant INOV8, were intentionally designed to disrupt Plaintiff's contractual relationship with Cintas, at the sole expense of Plaintiff and for the sole benefit of Defendants INOV8, SAFDEYE, and LINKER.

271.    Actual disruption of the Cintas Purchase Agreement did occur, as when it was discovered that the PPE-Aid nitrile gloves were not comprised of 100% nitrile, Cintas, per its authority under the Cintas Purchase Agreement, cancelled and returned the non-conforming PPE-Aid nitrile gloves.

272.    On or about February 24, 2021, Plaintiff received an email from Cintas confirming that all pending orders of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves were cancelled.

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

273. Cintas additionally requested to be credited for all of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves that Cintas was returning and informed Plaintiff that Cintas would not pay any outstanding invoices until all credits were issued for the non-conforming PPE-Aid nitrile gloves.

274. Cintas thereafter returned all of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves that were shipped in January and February of 2021, plus an additional 7,594 boxes of the first purchase order made on or about December 2, 2020, amounting to a total of 151,654 boxes returned to Plaintiff and a loss sustained by Plaintiff at a sum of $2,252,061.90, calculated by 151,654 boxes at Plaintiff's purchase price of $14.85 per box.

275. Defendants INOV8, SAFDEYE, and LINKER were fully aware of Plaintiff's intent to maintain the relationship with Cintas, as Defendants SAFDEYE and LINKER, by and through Defendant INOV8, routinely sourced gloves comprised of 100% nitrile for Plaintiff's ongoing relationship.

276. Plaintiff's ongoing relationship with Cintas was likely to provide a future economic benefit to Plaintiff, as Cintas continued placing orders and Plaintiff continued to fulfill them.

277. As a direct and proximate result of the intentional interference with Plaintiff's existing contract with Cintas, Plaintiff sustained massive financial losses as a result of returns of the non-conforming product, interest rate on the non-conforming product that Plaintiff could no longer sell, shipping costs, and costs of storage to warehouse the non-conforming product that Plaintiff could no longer sell.

278. Plaintiff is informed and beliefs, and thereon alleges, that the actions of Defendants INOV8, SAFDEYE, and LINKER were undertaken for the purpose of damaging Plaintiff and rendering Plaintiff unable to fulfill its obligations under the Cintas Purchase Agreement, and therefore, future

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

purchase orders from Cintas.

279.   Accordingly, Plaintiff has suffered damages in a sum to be shown according to proof, but in no event less than the jurisdictional minimum of this Court.

280.   The acts and conduct of Defendants constitute "malice" as defined in Cal. Code of Civ. Pr. § 3294(c)(1) in that it was intended by Defendants to cause injury to Plaintiff or was despicable conduct which was carried on by Defendants with a willful and conscious disregard of the rights or safety of Plaintiff. The acts of Defendants were conducted fraudulently, maliciously, and oppressively and with the advance knowledge, conscious disregard, authorization, ratification, or act of oppression, within the meaning of Cal. Code of Civ. Pr. § 3294. The actions and conduct of Defendants were intended to cause injury to Plaintiff with the intention to deprive Plaintiff of property and legal rights, justifying an award of exemplary and punitive damages in an amount according to proof.

### EIGHTH CAUSE OF ACTION
### UNFAIR COMPETITION
### (Against Defendant WORLD TECH TOYS)

281.   Plaintiff hereby incorporates by reference each and all of the allegations contained in all paragraphs of this Complaint as though fully set forth within this Cause of Action.

282.   The acts, omissions, and practices of Defendants, and each of them, as alleged herein, constitute unlawful and unfair business practices within the meaning of California Business & Professions Code § 17200, *et. seq.*

283.   Unlawful business practices under California's unfair competition law includes "anything that can properly be called a business practice and that at

the same time is forbidden by law." (*People v. Persolve, LLC* (2013) 218 Cal.App.4th 1267, 1273.)

284.   Where the alleged acts are fraudulent, a plaintiff need only show that members of the public are likely to be deceived. (*Id.* at 1272-73.)

285.   In pleading fraud under the unfair competition law, a plaintiff must demonstrate reliance on the fraud leading to the plaintiff's injuries, although the plaintiff need not show that the fraudulent conduct was the sole, or even the predominant or decisive factor. (*Id.*)

286.   Defendant WORLD TECH TOYS has engaged in unlawful and fraudulent acts by intentionally misrepresenting and marketing its PPE-Aid nitrile gloves as comprised of 100% nitrile, when in fact, the PPE-Aid nitrile gloves are comprised of phthalate plasticized PVC.

287.   The boxes of Defendant WORLD TECH TOYS' PPE-Aid gloves specifically stated: "nitrile gloves," and were shipped in boxes containing Defendant WORLD TECH TOYS' company logo.

288.   On information and belief, Defendant WORLD TECH TOYS specifically represented to Plaintiff, through Defendant SAFDEYE that the PPE-Aid nitrile gloves were 100% nitrile.

289.   Defendant WORLD TECH TOYS further provided Plaintiff with an additional specification sheet that identified the PPE-Aid nitrile gloves as nitrile, FDA approved, and exam grade, and included a test report dated October 6, 2020 describing the PPE-Aid nitrile gloves as "nitrile."

290.   Defendant WORLD TECH TOYS intentionally misrepresented the true composition of the PPE-Aid nitrile gloves with the intent to defraud Plaintiff and induce Plaintiff into purchasing the PPE-Aid nitrile gloves, believing them to be comprised of 100% nitrile.

291.   As Defendant WORLD TECH TOYS was the supplier of the PPE-Aid

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

nitrile gloves and specifically marketed the PPE-Aid gloves with Defendant WORLD TECH TOYS' logo, Defendant WORLD TECH TOYS knew or should have known that the PPE-Aid nitrile gloves were not 100% nitrile, but rather, were comprised of phthalate plasticized PVC.

292.  As Defendant WORLD TECH TOYS at all times herein marketed the PPE-Aid nitrile gloves as 100% nitrile, members of the public, such as Plaintiff, were likely to be deceived into believing the PPE-Aid nitrile gloves were comprised of 100% nitrile.

293.  Plaintiff relied on Defendant WORLD TECH TOYS' fraudulent representations, as Plaintiff had no reason to believe that Defendant WORLD TECH TOYS would fraudulently conceal such a material fact.

294.  Accordingly, Plaintiff placed one order for purchase of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves in November of 2020 for a total of 160,000 boxes in the sum of approximately $2,374,663.50.

295.  Plaintiff additionally placed a second order for purchase of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves in January of 2021 for a total of 600,000 boxes in the sum of approximately $5,293,431.00.

296.   Had Plaintiff been aware that the PPE-Aid nitrile gloves were comprised of phthalate plasticized PVC and not nitrile, Plaintiff would not have purchased the PPE-Aid nitrile gloves from Defendant WORLD TECH TOYS.

297.  Plaintiff is informed and believes and thereon alleges that Defendant WORLD TECH TOYS' conduct was performed with the intent and purpose of damaging or destroying Plaintiff's business and reputation.

298.  When it was discovered that the PPE-Aid nitrile gloves purchased from Defendant WORLD TECH TOYS were not comprised of 100% nitrile, Plaintiff sustained massive financial losses as a result of returns of the non-conforming product, interest rate on the non-conforming product that Plaintiff

San Diego Biz Law, APC
4225 Executive Square, 6ᵗʰ Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

could no longer sell, shipping costs, and costs of storage to warehouse the non-conforming product that Plaintiff could no longer sell.

299.   Unless restrained, Defendant WORLD TECH TOYS will continue in the acts and conduct alleged herein that have resulted and will continue to result in irreparable injury to Plaintiff for which damages would not afford adequate relief. Plaintiff therefore requests this Court issue a permanent injunction pursuant to California Business & Professions Code § 17203 restraining and enjoining Defendant WORLD TECH TOYS, and anyone acting at their direction or in concert with Defendant WORLD TECH TOYS, from continuing the acts of unfair competition alleged herein.

## NINTH CAUSE OF ACTION
### CONVERSION
### (Against Defendants INOV8, SAFDEYE, and LINKER)

300.   Plaintiff hereby incorporates by reference each and all of the allegations contained in all paragraphs of this Complaint as though fully set forth within this Cause of Action.

301.   To prove an act of conversion occurred, a party must demonstrate that: (1) the party had ownership or rights to possession of the property at issue at the time of the alleged conversion, (2) the defendant acquired the property by a wrongful act or disposition of property rights, and (3) the plaintiff was damaged as a result. (*Spates v. Dameron Hospital Assn.* (2003) 114 Cal.App.4th 208, 221.)

302.   A manual taking of the property at issue is not required, rather, it is sufficient to show only an assumption of ownership over the property, or that the defendant has applied the property to the defendant's own use. (*Id.*)

303.   A party further need not prove knowledge, motive, or bad faith on the part

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

of the defendant. (*Duvall v. Galt Medical Corp.*, 2007 WL 4207792, at *9 (N.D.Cal.,2007).)

304.    Defendants SAFDEYE and LINKER, by and through Defendant INOV8, fraudulently converted funds that Plaintiff was rightfully entitled to upon return of the non-conforming PPE-Aid nitrile gloves sold by Defendant WORLD TECH TOYS.

305.    When it was discovered that the PPE-Aid nitrile gloves purchased from Defendant WORLD TECH TOYS were not comprised of 100% nitrile, Cintas, per its authority under the Cintas Purchase Agreement, cancelled and returned the non-conforming PPE-Aid nitrile gloves.

306.    On or about February 24, 2021, Plaintiff received an email from Cintas confirming that all pending orders of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves were cancelled.

307.    Cintas additionally requested to be credited for all of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves that Cintas was returning and informed Plaintiff that Cintas would not pay any outstanding invoices until all credits were issued for the non-conforming PPE-Aid nitrile gloves.

308.    Cintas thereafter returned all of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves that were shipped in January and February of 2021, plus an additional 7,594 boxes of the first purchase order made on or about December 2, 2020, amounting to a total of 151,654 boxes returned to Plaintiff and a loss sustained by Plaintiff at a sum of $2,252,061.90, calculated by 151,654 boxes at Plaintiff's purchase price of $14.85 per box.

309.    Plaintiff subsequently requested that Defendant INOV8 return all money paid by Plaintiff for all outstanding orders of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves that had not yet been delivered to Cintas, however, Defendant SAFDEYE informed Plaintiff that he had already

transferred the funds to Defendant WORLD TECH TOYS and that Defendant WORLD TECH TOYS would not refund. Defendant SAFDEYE stated that Defendant WORLD TECH TOYS owed money to the bank and that the bank would take possession of the PPE-Aid gloves if Plaintiff did not. Accordingly, Plaintiff was left with no choice but to have the outstanding orders shipped directly to Plaintiff's warehouse. The sum paid to Defendant INOV8 for these outstanding shipments was approximately $3,154,140.00, calculated by 212,400 boxes of PPE-Aid nitrile gloves at Plaintiff's purchase price of $14.85 per box.

310.   In furtherance of this conversion, Defendants SAFDEYE and LINKER subsequently sent Plaintiff a Settlement Agreement to be executed between Plaintiff and Defendant INOV8.

311.   The Settlement Agreement, dated March 4, 2021, purported to release Defendant INOV8 from any liabilities relating to certain non-conforming products that Defendant INOV8 purchased on behalf of Plaintiff.

312.   Specifically, the Settlement Agreement provided that Plaintiff would not be required to take delivery on product ordered from Defendant INOV8, and further, that Plaintiff acknowledged that Defendant INOV8 was required to deposit funds toward certain orders and that *if* Defendant INOV8 was able to recover any sum of the deposits paid, Defendant INOV8 would return the funds to Plaintiff.

313.   The Settlement Agreement specified that Defendant INOV8 had paid a total deposit amount of approximately $1,665,725.00, however, the Settlement Agreement did not mandate that Defendant INOV8 return any funds to Plaintiff unless such funds were recovered by Defendant INOV8.

314.   On information and belief, Plaintiff alleges that Defendants INOV8, SAFDEYE, and LINKER, however, sought to capitalize off of Plaintiff's

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

losses and hastily induced Plaintiff to sign the Settlement Agreement so that Defendants INOV8, SAFDEYE, and LINKER would not be obligated to return any funds owed to Plaintiff.

315.   Although Defendant INOV8 returned to Plaintiff the $3,154,140.00 for Plaintiff's purchase of 600,000 boxes of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves that Plaintiff was forced to possess and store, as well as an additional $318,417.50 for non-conforming goods from another supplier, Defendant INOV8 owed Plaintiff approximately $96,982.50 for shortages on Defendant INOV8's Invoice Nos. 1019, 1015, 1015, and 1016, amounting to a total owed to Plaintiff in the sum of approximately $508,390.50 on the total $3,883,965.50 Plaintiff paid to Defendant INOV8 after accounting for the monies returned.

316.   On or about February 19, 2021, Defendant SAFDEYE returned an additional $250,000 to Plaintiff, rendering the outstanding sum owed to Plaintiff approximately $258,390.50.

317.   When Plaintiff inquired as to when Plaintiff could expect to receive the remaining $258,390.50, Defendant SAFDEYE informed Plaintiff that he had, without Plaintiff's knowledge or authorization, sent the remaining outstanding balance to Defendant WORLD TECH TOYS for a deposit on 300,000 boxes of the PPE-Aid nitrile gloves.

318.   At no time did Plaintiff instruct Defendant SAFDEYE or Defendant LINKER to continue ordering the non-conforming PPE-Aid nitrile gloves from Defendant WORLD TECH TOYS, especially after sustaining massive financial losses in the return of the PPE-Aid nitrile gloves from Cintas.

319.   On information and belief, Plaintiff alleges that Defendant SAFDEYE misrepresented the true circumstances of the outstanding balance owed to Plaintiff in the sum of approximately $258,390.50 and intends to withhold

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

those funds from Plaintiff by leading Plaintiff to believe that Defendants INOV8, SAFDEYE, and LINKER no longer possess the funds.

320.   To date, Plaintiff has not received the sum rightfully owed by Defendants INOV8, SAFDEYE, and LINKER, yet has been forced to sustain massive financial losses as a result of returns of the non-conforming product, interest rate on the non-conforming product that Plaintiff could no longer sell, shipping costs, and costs of storage to warehouse the non-conforming product that Plaintiff could no longer sell.

321.   The actions and conduct of Defendants INOV8, SAFDEYE, and LINKER constitute a violation of California Penal Code § 496(c).

322.   Plaintiff has been injured by the violation of subdivision (a) by Defendants INOV8, SAFDEYE, and LINKER of California Penal Code § 496 and is therefore entitled to three times the amount of actual damages sustained by Plaintiff in a sum no less than $775,171.50, costs of suit, and reasonable attorneys' fees.

## TENTH CAUSE OF ACTION
### CONSPIRACY
### (Against All Defendants)

323.   Plaintiff hereby incorporates by reference each and all of the allegations contained in all paragraphs of this Complaint as though fully set forth within this Cause of Action.

324.   At all material times hereto, Defendants WORLD TECH TOYS, INOV8, SAFDEYE, and LINKER agreed, planned, and conspired to commit unlawful acts as alleged herein, and have and will continue to take acts in furtherance of this conspiracy, which include but are not limited to fraudulently misrepresenting the composition of Defendant WORLD TECH TOYS' PPE-

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

Aid nitrile gloves as 100% nitrile, thereby inducing Plaintiff to purchase large quantities of the PPE-Aid nitrile gloves, leading to profits for Defendants, and each of them.

325.   At all times, Defendant WORLD TECH TOYS marketed its PPE-Aid nitrile gloves as 100% nitrile.

326.   At all times, Defendants SAFDEYE and LINKER represented to Plaintiff that Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves were 100% nitrile.

327.   Defendant WORLD TECH TOYS represented to Plaintiff that the PPE-Aid nitrile gloves were comprised of 100% nitrile, when in fact, they were comprised of phthalate plasticized PVC.

328.   Defendants WORLD TECH TOYS, INOV8, SAFDEYE, and LINKER further perpetrated this fraudulent misrepresentation by providing Plaintiff with fraudulent documentation from the United States FDA that purportedly identified Hongray as the manufacturer of Defendant WORLD TECH TOYS' PPE-Aid nitrile gloves. On or about March 19, 2021, a representative on behalf of Plaintiff contacted Hongray, requesting confirmation that the brand PPE-Aid was comprised of 100% nitrile. Plaintiff received a response from Hongray the same day stating that the PPE-Aid brand was not manufactured by Hongray and that it was counterfeit.

329.   On information and belief, Plaintiff alleges that Defendants WORLD TECH TOYS, INOV8, SAFDEYE, and LINKER knew, or should have known, that the PPE-Aid nitrile gloves were not comprised of 100% nitrile, yet fraudulently and intentionally concealed the true composition of the PPE-Aid nitrile gloves in order to profit at Plaintiff's sole expense.

330.   On or about November 15, 2021, Plaintiff contacted Mr. Kouyoumijan, informing Mr. Kouyoumijan of the test results Plaintiff had received regarding

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

the PPE-Aid nitrile gloves. In response, Mr. Kouyoumijan requested that Plaintiff forward the specification sheet received from Defendant SAFDEYE. In a telephone conversation between Plaintiff and Mr. Kouyoumijan shortly thereafter, Mr. Kouyoumijan informed Plaintiff that Defendant SAFDEYE was aware that the PPE-Aid nitrile gloves were not 100% nitrile.

331. Defendants WORLD TECH TOYS, INOV8, SAFDEYE, and LINKER, however, continued to conspire against Plaintiff by representing to Plaintiff that the PPE-Aid nitrile gloves were comprised of 100% nitrile, furthering the specific intent of Defendants, and each of them, to defraud Plaintiff.

332. As a direct and proximate result of the misconduct of Defendants WORLD TECH TOYS, INOV8, SAFDEYE, and LINKER, Plaintiff has suffered severe financial damages which will be established according to proof at trial.

333. The acts and conduct of Defendants constitute "malice" as defined in Cal. Code of Civ. Pr. § 3294(c)(1) in that it was intended by Defendants to cause injury to Plaintiff or was despicable conduct which was carried on by Defendants with a willful and conscious disregard of the rights or safety of Plaintiff. The acts of Defendants were conducted fraudulently, maliciously, and oppressively and with the advance knowledge, conscious disregard, authorization, ratification, or act of oppression, within the meaning of Cal. Code of Civ. Pr. § 3294. The actions and conduct of Defendants were intended to cause injury to Plaintiff with the intention to deprive Plaintiff of property and legal rights, justifying an award of exemplary and punitive damages in an amount according to proof.

///

///

///

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

## PRAYER

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For compensatory and special damages according to proof at the time of trial, but no less than $8,136,243.62;

2. For general damages according to proof at the time of trial;

3. For punitive and exemplary damages where allowed by law;

4. For treble damages where allowed by law;

5. For disgorgement of ill-gotten gains;

6. For prejudgment and post-judgment interest;

7. For attorneys' fees pursuant to the applicable statutes; and

8. For such other and further relief that the Court may deem just and proper.

Dated: October 14, 2022                **SAN DIEGO BIZ LAW, APC**

By: /s/ Stefano Riznyk
Stefano Riznyk, Esq.
Attorney for Plaintiff

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs hereby demand a trial by jury on all issues so triable.


Dated: October 14, 2022                     **SAN DIEGO BIZ LAW, APC**


                                            By: <u>/s/ Stefano Riznyk</u>
                                            Stefano Riznyk, Esq.
                                            Attorney for Plaintiff

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933

# VERIFICATION

UNITED STATES DISTRICT COURT   )
                                        ) ss.
Central District of California         )

      I, WAYNE BURGESS, am a Plaintiff to this action, and hereby state that I have read the foregoing **FIRST COMPLAINT** and know its contents. The matters stated in it are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters, I believe them to be true.

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

      EXECUTED this 13th day of October, 2022 at Fyffe, Alabama.


_____
**WAYNE BURGESS**
Bur-Tex Inc.
Vice-President

San Diego Biz Law, APC
4225 Executive Square, 6th Floor
La Jolla, CA 92037
Voice: 619.793.4827 / Fax 310.388.5933