

BRYAN CAVE LEIGHTON PAISNER LLP
1290 Avenue of the Americas
New York NY 10104 3300
T: +1 212 541 2000
F: +1 212 541 4630
bclplaw.com

June 7, 2023

Noah M. Weissman
Partner
Direct: 212-541-2028
Fax: 212-541-1428
nmweissman@bclplaw.com

The Honorable Lorna G. Schofield
Thurgood Marshall United States Courthouse
United States District Court for the S.D.N.Y.
40 Foley Square
New York, NY 10007

<u>Via ECF</u>

    Re: *Bur-Tex Hosiery, Inc. v. World Tech Toys, Inc., et al.*,
      <u>Case No. 1:23-cv-03454-LGS</u>

Dear Hon. Schofield:

Pursuant to Rule III.C.2 of your Individual Rules ("Rules"), Defendants Invo8 Marketing, LLC ("Inov8"), Jack Safdeye, and David Linker request leave to file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Defendant World Tech Toys, Inc. ("WTT") also seeks leave to file a near-identical motion for judgment on the pleadings. WTT previously filed an answer. (Dkt. 34). Pursuant to Rule III.A.1, Defendants requests a pre-motion conference.

Defendants propose the following briefing schedule:[1] motions to be filed within 21 days from the date of the pre-motion conference, with opposition, if any, to be filed within 21 days of the moving deadline, and reply papers, if any, to be filed within 15 days of the opposition deadline.

At the heart of Defendants' motions is the release set forth in the Settlement Agreement and Release attached as Exhibit H to the Complaint. The agreement bars Bur-Tex Hosiery, Inc.'s ("Bur-Tex") claims as a matter of law. Specifically, the release states:

> "The Parties . . . release and discharge the other Party, together with their past, present, and future officers, . . . members, . . . agents, employees, managers, representatives, . . . and all persons acting by, through, under, or in concert with them, and each of them . . . from all known and unknown . . . causes of action, suits, . . . expenses (including attorneys' fee and costs actually incurred), and punitive damages, of any nature whatsoever, known or unknown, which either Party has or may have had, against the

---

[1] In light of the unique procedural circumstances of the action, Defendants Inov8, Mr. Safdeye, and Mr. Linker further request the Court's guidance regarding the timing of the filing of their responsive pleadings. The Central District of California transferred this case to this Court without setting any deadlines for the filing of their responsive pleadings in this Court. Further, as Plaintiff has yet to appear in this action through New York counsel, Defendants have been unable to seek an agreement on a filing deadlines.

June 7, 2023
Page 2

> other Party, whether or not apparent or yet to be discovered, or which may hereafter develop, for any acts or omissions related to or arising from (a) the order, purchase, and sale of the Products at issue, whether or not such Products were delivered, including without limitation the quality of the Products and the deposits referenced in Section 2 (the "Dispute"), (b) an (sic) agreement between the Parties, (c) any other matter between the Parties and/or (d) any claims under federal, state or local law, rule or regulation."

(Dkt. 1, Ex. H, ¶ 3).

In addition, the Settlement Agreement and Release provides that:

- "The Parties intend this Agreement to be legally binding upon and shall inure to the benefit of each of them and their respective successors, assigns, executors, administrators, heirs and estates.  **Moreover, the persons and entities referred to in Section 3 above [i.e., in the Release], but not a Party, are third-party beneficiaries of this Agreement.**" (Dkt. 1, Ex. H, ¶ 7) (emphasis added);
- "This Agreement constitutes the entire agreement and understanding of the Parties and supersedes all prior negotiations and/or agreements, proposed or otherwise, written or oral concerning the subject matter hereof." (Dkt. 1, Ex. H, ¶ 8);
- "[T]his Agreement shall be, and remain, in effect despite any alleged breach of this Agreement or the discovery or existence of any new or additional fact, or any fact different from that which either Party now knows or believes to be true."  (Dkt. 1, Ex. H, ¶ 9);
- "In entering into this Agreement, the Parties acknowledge that they have relied upon the legal advice of their respective attorneys, who are attorneys of their own choosing, that such terms are fully understood and voluntarily accepted by them, and that, other than the consideration set forth herein, no promises or representations of any kind have been made to them by the other Party. The Parties represent and acknowledge that in executing this Agreement they did not rely, and have not relied, upon any representation or statement, whether oral or written, made by the other Party of by that other Party's agents, representatives, or attorneys with regard to the subject matter, basis or effect of this Agreement or otherwise." (Dkt. 1, Ex. H, ¶12); and,
- "By signing below, each Party warrants and represents that the persons signing the Agreement on its behalf has authority to bind that Party . . . ."  (Dkt. 1, Ex. H, ¶14).

Bur-Tex's claims fall squarely within the release. First, the agreement defines the term "Products" as products Bur-Tex purchased and has committed to continue to purchase from Invo8. Second, Bur-Tex admits that, prior to executing the Settlement Agreement and Release, it discovered that the WTT gloves it purchased from Invo8 were not 100% nitrile, as allegedly promised by Mr. Linker and Mr. Safdeye and that, as a result, Bur-Tex's customer rejected all of the WTT gloves causing a substantial financial loss. (Dkt. 1, ¶¶ 37-46 (discussing extent of order and belief gloves were 100% nitrile), ¶¶ 48-49 (notice from customer in February 2021 that gloves were not 100%), ¶¶ 53-55, 57 (cancellation of orders and demand for multi-million refund in February 2021), ¶¶ 58-59 (admitting that Bur-Tex was sent the Settlement Agreement and Release, which it executed, in March 2021)). Thus, based on the allegations, Bur-Tex was fully

aware of the claims it may have had against Defendants prior to executing the Settlement Agreement and Release. Not only do the claims fall squarely within the release, but each of the Defendants are released by the agreement. Invo8, as a party to the agreement, was expressly released by Bur-Tex from any and all claims in this case—all of which relate to Bur-Tex's purchase and Inov8's sale of WTT's examination gloves. Mr. Safdeye, by virtue of his position as Invo8's officer, manager, and sole member, also was expressly released. As for Mr. Linker and WTT, Bur-Tex admits that each were agents of Invo8. (Dkt. 1, ¶ 7). Additionally, both Mr. Linker and WTT are alleged to have "act[ed] by, through, under, or in concert with" Inov8 in selling and delivering the gloves to Bur-Tex. (Dkt. 1, ¶¶ 7, 32-43, 52-53, 232). Accordingly, Defendants were released by Bur-Tex as to each and every claim alleged.

In response to Defendants' motions, Bur-Tex will likely contend that the Settlement Agreement and Release is unenforceable, contending it (1) lacks consideration, (2) was entered into under duress, and (3) is void because Inov8 and Mr. Safdeye purportedly knew that Brent Burgess lacked the authority to sign it. These conclusory allegations are contrary to the clear and unambiguous language of the Settlement Agreement and Release. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (courts do not accept as true allegations in a complaint where, as here, the documents attached to the complaint contradict such allegations) (citing *Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide*, 369 F.3d 212, 222 (2d Cir. 2004) (same)). Furthermore, these arguments were previously rejected by the Order of Hon. Slaughter in the Central District of California. *See* Dkt. 63, at 4-8.

As Judge Slaughter recognized, the Settlement Agreement and Release explicitly sets forth and acknowledges the good and valuable consideration exchanged. *Id.* at 4 ("First, the Settlement Agreement is not wanting for consideration."). Under the Settlement Agreement and Release, Bur-Tex was relieved of the obligation to (1) purchase additional "Product" through Inov8, (2) make additional payments for "Products" already purchased, and (3) take delivery of and to pay for Product already ordered. (Dkt. 1, Ex. H, ¶1.). The Settlement Agreement and Release also declares that Bur-Tex did not rely on any representations by Inov8, Mr. Safdeye or anyone else in entering into the settlement. *Id.* ("Second, Bur-Tex's argument the Settlement Agreement in its entirety was procured by fraud is unpersuasive."). Lastly, Brent Burgess signed the Settlement Agreement and identified himself as Bur-Tex's "CEO" and represented and warranted that he had authority to bind Bur-Tex. *Id.* at 6-7 ("Third, the materials before the court do not indicate Bur-Tex's signatory to the Settlement Agreement, Mr. Brent Burgess, lacked authority to do so and that this was a fact known to Defendants."). In sum, Bur-Tex, through its CEO Brent Burgess, entered into a demonstrably valid settlement with a broad release that covered the very product at issue in this case and each of the Defendants who were expressly recognized as third-party beneficiaries. As a result, Defendants are entitled to judgment in their favor as a matter of law. Thank you for the Court's attention to this matter.

Respectfully submitted,
*/s/ Noah M. Weissman*
**Noah M. Weissman**
Partner