UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                    :

BUR-TEX HOSIERY, INC.,               :

                                      :

                         Plaintiff,    :         23 Civ. 3454 (LGS)

                                        :

              -against-          :        **OPINION AND ORDER**

                                      :

WORLD TECH TOYS, INC., et al.,     :

                                      :

                        Defendants. :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Bur-Tex Hosiery, Inc. brings this action against Defendants World Tech Toys,

Inc. ("World Tech Toys"), INOV8 Marketing LLC ("INOV8"), Jack Safdeye, David Linker,

Kev Kouyoumijan, World Trading 23, Inc. ("WT23") and Does 1 through 10 (together,

"Defendants").[1]  The First Amended Complaint (the "FAC") asserts ten causes of action related

to Defendants' failure to provide Plaintiff gloves that were 100% nitrile as agreed.  Defendants

move to dismiss.  For the reasons below, Defendants' motion is granted in part and denied in

part.  Plaintiff may seek leave to amend the FAC solely as to personal jurisdiction over

Defendants Linker, WT23 and Kouyoumijan.

---

[1] The Court has subject matter jurisdiction based on diversity of citizenship.  In addition to the allegations in the FAC, counsel has reported that, as of the filing of the original Complaint on October 17, 2022, Defendant Linker was a citizen of North Carolina; Defendant INOV8 was a single member limited liability company whose sole member was Defendant Safdeye, who was a citizen of New York.  The Complaint also alleges that Defendant World Tech Toys and WT23 were incorporated in California with "an entity location address" in California, that Defendant Kouyoumijan is a "resident" of California, and that Plaintiff is an Alabama corporation with an "entity address" in Alabama.  The Court interprets, without prejudice to a factual showing otherwise, that "entity location address" and "entity address" mean "principal place of business," and "resident" means "citizen."  *See* 28 U.S.C. § 1332(a)(1), (c)(1).

I.   **BACKGROUND**

The following facts are taken from the FAC and its attachments and are presumed to be true for purposes of this motion.  *See Sabir v. Williams*, 52 F.4th 51, 54 (2d Cir. 2022).

Plaintiff is a family-owned business that primarily designs and manufactures hosiery.  At the onset of the COVID-19 pandemic, Plaintiff agreed to sell to Cintas Corporation ("Cintas") 100% nitrile gloves.  Plaintiff contacted Defendant Linker to assist in the acquisition of the gloves.  Linker and Plaintiff had a preexisting business relationship through Shoe Show, a company owned and managed by Linker's family.  Shoe Show had purchased socks from Plaintiff amounting to $3 million in sales annually.

Around April 2020, Linker introduced Plaintiff to Defendant Safdeye as a potential broker of the nitrile gloves.  Safdeye was at all relevant times Chief Executive Officer of Defendant INOV8.  Beginning in approximately November 2020, Safdeye, Linker and INOV8 sourced gloves from Defendants Kouyoumijan, WT23 and World Tech Toys for Plaintiff to sell to Cintas.  Linker and Safdeye repeatedly represented to Plaintiff that the gloves were 100% nitrile, including through a test report that purported to show the composition of the gloves and a specification sheet that labeled the gloves as nitrile.  Plaintiff traveled to World Tech Toys's warehouse to inspect the gloves but was not allowed to view them.  Instead, Safdeye's representative took photographs of the glove boxes, which were labeled as containing "nitrile gloves."  Safdeye forwarded the photographs to Plaintiff, who in turn sent them to Cintas.  Cintas approved several purchase orders.  Plaintiff paid deposits to INOV8 to secure the gloves to sell to Cintas.

After receiving deliveries of gloves, Cintas told Plaintiff that the gloves were not 100% nitrile and instead were a blended composition.  Linker and Safdeye continued to assert that the gloves were nitrile.

In February 2021, Plaintiff received an email from Cintas confirming that the pending orders were cancelled.  Cintas returned to Plaintiff approximately 150,000 boxes of gloves, resulting in a loss to Plaintiff of over $2 million.  Plaintiff also incurred costs related to storage, interest, insurance and freight.  Cintas asked to be credited for all of the returned gloves and informed Plaintiff that it would not pay any outstanding invoices until all credits were issued.

Plaintiff requested that INOV8 return the money that Plaintiff had paid for outstanding orders that had not yet been delivered to Cintas.  Safdeye informed Plaintiff that he had already transferred the funds to Kouyoumijan, WT23 and World Tech Toys and that they would not return the money.  Safdeye also stated that Kouyoumijan, WT23 and World Tech Toys owed money to a bank, and the bank would take possession of the undelivered gloves if Plaintiff did not, and Plaintiff would "lose out."  Plaintiff sent additional funds to INOV8 and had the outstanding orders shipped directly to Plaintiff's warehouse.

On March 4, 2021, Linker, Safdeye and INOV8 presented Plaintiff with a settlement agreement (the "Agreement") regarding the products that Plaintiff had purchased and committed to continue to purchase from INOV8 (the "Products").  The Agreement conditionally requires INOV8 to return to Plaintiff approximately $1.7 million in deposits that Plaintiff paid to INOV8 for the purchase of the Products and that INOV8 in turn paid to "third parties."  The Agreement states that "the third parties are working to liquidate such Products.  INOV8 will return the deposits . . . to Burtex when such third parties return the deposit to INOV8."

3

The Agreement includes a mutual release (the "Release"), which states that INOV8 and Plaintiff release each other, "and all persons acting by, through, under, or in concert with" any of them, from any claims "arising from . . . the order, purchase, and sale of the Products . . . including without limitation the quality of the Products and the deposits referenced [above]." The Agreement also states that: (1) the Agreement constitutes the "entire agreement" of the parties and "supersedes all prior negotiations and/or agreements;" (2) the parties "represent and acknowledge that . . . they did not rely" on any representation or statement by the other party or its agents; (3) the Agreement "shall . . . remain[] in effect despite any alleged breach . . . or the discovery or existence of any new or additional fact, or any fact different from that which either Party now knows or believes to be true;" (4) New York law shall apply; (5) any action relating to the Agreement must be filed in a state or federal court located in the City of New York, and "[a]ll Parties [defined as Plaintiff and INOV8] to this Agreement consent to personal jurisdiction in such courts."

Plaintiff's agent Brent Burgess was informed that if he signed the Agreement on behalf of Plaintiff immediately (i.e., within the hour), Linker, Safdeye and INOV8 had a buyer who would purchase the non-conforming gloves from Plaintiff. Linker told Plaintiff that, if the Agreement was not signed, Plaintiff would lose its business with Shoe Show. Linker sent repeated text messages every few moments insisting that Plaintiff sign the Agreement and presented an aggressive demeanor. Burgess signed the Agreement. After the Agreement was signed, Plaintiff was informed that the buyer had changed its mind and would not purchase the non-confirming gloves. One year later, Linker transferred Shoe Show's business away from Plaintiff to Safdeye's company, Majestic.

4

Plaintiff conducted an investigation which concluded that the gloves were not nitrile and were counterfeit, falsely purporting to be manufactured by the leading manufacturer of 100% nitrile gloves.  Plaintiff also commissioned an asset investigation report, which stated that Kouyoumijan and his family owned approximately $16 million in property assets and entities.  Plaintiff contacted Kouyoumijan to inform him of the gloves' composition, and Kouyoumijan informed Plaintiff that Safdeye was aware that the gloves were not 100% nitrile.

On October 17, 2022, Plaintiff filed this action in the U.S. District Court for the Central District of California.  Defendants World Wide Toys, INOV8 and Safdeye filed motions seeking dismissal under the doctrine of *forum non conveniens* based on the forum selection clause contained in the Agreement.  The California court applied California law to determine the validity of the Agreement and federal law to determine the enforceability of the forum selection clause for purposes of transfer.  *See Bur-Tex Hosiery Inc. v. World Tech Toys Inc.*, No. 22 Civ. 7547, 2023 WL 3267752, at *2-4 (C.D. Cal. Apr. 20, 2023).  On April 20, 2023, that court found the forum selection clause enforceable but denied the motion to dismiss and instead transferred the case to this court.  *Id.* at *6.  The California court held among other things that the forum selection clause was enforceable because Plaintiff had failed to make the required "strong showing" that the clause is invalid due to "fraud or overreaching."  *Id.* at *3-4.  Specifically, Plaintiff had not shown that "*the inclusion of that clause in the contract* [rather than the Agreement as a whole] was the product of fraud or coercion."  *Id.* at *4.  Following transfer, Plaintiff filed the FAC at issue in this motion.

## II.     DISCUSSION

5

### A.  Dismissal Based on the Release

Defendants move to dismiss this action on the ground that the Release in the Agreement bars all of the FAC's claims.  The motion is denied.  Reliance on a contractual release is an affirmative defense.  Fed. R. Civ. P. 8(c)(1).  An affirmative defense will not result in dismissal of a complaint unless facts supporting it are evident on the face of the complaint.  *See Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013); *Glob. Brand Holdings, LLC v. Rae Dunn Design LLC*, No. 23 Civ. 1644, 2024 WL 96537, at *2 (S.D.N.Y. Jan. 9, 2024).  In other words, a complaint is not required to plead facts that would negate an affirmative defense.  *See BPP Ill., LLC v. Royal Bank of Scotland Grp. PLC*, 603 F. App'x 57, 59 (2d Cir. 2015) (summary order) ("[A] plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense."); *accord In re Eur. Gov't Bonds Antitrust Litig.*, No. 19 Civ. 2601, 2022 WL 768680, at *13 (S.D.N.Y. Mar. 14, 2022), *reconsideration denied*, No. 19 Civ. 2601, 2022 WL 2168358 (S.D.N.Y. June 16, 2022).  Here the Agreement, including the Release, may be considered because it is referenced in, and attached to, the Complaint.  *Compare VeroBlue Farms USA Inc. v. Canaccord Genuity LLC*, No. 20 Civ. 4394, 2021 WL 3913555, at *1 n.2 (S.D.N.Y. Sept. 1, 2021) (on a motion to dismiss, considering a mutual release that was attached to and referenced in the complaint), *with Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*, 632 F. Supp. 3d 402, 446 (S.D.N.Y. 2022) (on a motion to dismiss, declining to consider a release in a settlement agreement that was not attached, referenced in or integral to the complaint).  Even though the FAC is not required to plead facts to negate the Release, the FAC does plead facts that plausibly support the inference that the Agreement was procured by fraud.  Consequently, for both reasons -- that the FAC is not required to negate the Release, and because it pleads facts that plausibly do so -- the motion to dismiss the FAC based on the Release is denied.

6

### 1.  Choice of Law

As a threshold matter, New York law determines the validity of the Agreement and the enforceability of the Release.  The basis for this conclusion is that the parties agree in their briefing that New York law applies and that the FAC asserts its claims under New York law. *See Ezrasons, Inc. v. Travelers Indem. Co.*, 89 F.4th 388, 394 n.5 (2d Cir. 2023); *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017).  Although the Agreement contains a New York choice of law provision, it does not apply until the Agreement is determined to be valid. *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012) ("Applying the choice-of-law clause to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established."); *Flores v. Chime Fin., Inc.*, No. 21 Civ. 4735, 2022 WL 873252, at *4 (S.D.N.Y. Mar. 23, 2022).

### 2.  Fraud in the Inducement

Plaintiff does not dispute that the signed Agreement purports to release the claims asserted against all Defendants in this action.  But the FAC does allege that the Agreement was fraudulently induced.  Under New York law, "a valid release constitutes a complete bar to an action on a claim which is the subject of the release."  *Centro Empresarial Cempresa S.A. v. Am. Móvil, S.A.B. de C.V.*, 952 N.E.2d 995, 1000 (N.Y. 2011); *accord Great Lakes Reinsurance (UK) SE v. Herzig*, No. 16 Civ. 9848, 2023 WL 3560578, at *12 (S.D.N.Y. May 18, 2023) (New York law).  However, "any of the traditional bases for setting aside written agreements, namely, duress, illegality, fraud, or mutual mistake," will invalidate a release.  *Centro Empresarial Cempresa S.A.*, 952 N.E.2d at 1000.

Under New York law, "[a] plaintiff seeking to invalidate a release due to fraudulent inducement must establish the basic elements of fraud, namely a representation of material fact,

the falsity of that representation, knowledge by the party who made the representation that it was false when made, justifiable reliance by the plaintiff, and resulting injury. . . . [A] party that releases a fraud claim may later challenge that release as fraudulently induced only if it can identify a separate fraud from the subject of the release." *Centro Empresarial Cempresa S.A.*, 952 N.E.2d at 1000; *accord Shapiro v. NFGTV, Inc.*, 16 Civ. 9152, 2018 WL 2127806, at *8 (S.D.N.Y. Feb. 9, 2018) (New York law).

The Release covers fraud claims regarding the non-conforming gloves but does not cover fraud in the procurement of the Agreement containing the Release. Count Two of the FAC alleges fraud in the inducement based in part on the allegedly fraudulent statement that "Defendants SAFDEYE and LINKER induced Plaintiff's execution of the Release by informing Plaintiff that . . . a third party would purchase the non-conforming goods but could not do so prior to execution of the Release."[2]

The FAC further alleges that "[o]n or about March 4th, 2021, . . . Defendants Linker, INOV8 and Safdeye . . . presented Plaintiff's agent, Brent Burgess, with a release to sign. Mr. Burgess was informed that if he signed the release immediately (i.e. within the hour), Defendants Linker, Safdeye and INOV8 had a buyer who would purchase all of the non-conforming gloves, relieving Plaintiff of its massive losses. . . . The release was signed. Plaintiffs were informed

---

[2] The FAC alleges that Defendants made a second fraudulent statement that, "if Plaintiff did not sign [the Agreement], Plaintiff would lose the Shoe Show business, worth $3 million in annual sales to Plaintiff." However, the statement as alleged is not a false promise to continue to do business, but rather a credible threat to terminate business. *See Centro Empresarial Cempresa S.A.*, 952 N.E.2d at 1000 (a "basic element" of fraudulent inducement is "the falsity" of the representation); *cf. Donnay USA Ltd. v. Donnay Int'l S.A.*, No. 15 Civ. 5969, 2016 WL 9640001, at *7 (E.D.N.Y. Sept. 1, 2016) (New York law) ("[D]efendants' threats to terminate the original agreement would only constitute unlawful duress if defendants were acting outside of their legal rights.").

8

immediately that the Buyer changed his mind . . . ."  The Complaint also asserts that "Defendants INOV8, SAFDEYE, and LINKER sought to capitalize from Plaintiff's losses and hastily induced Plaintiff to sign the Settlement Agreement so that Defendants INOV8, SAFDEYE, and LINKER would not be obligated to return any funds owed to Plaintiff."

These alleged facts, if true, and construed in favor of the non-moving party as required, support the plausible inference that Safdeye and Linker's statements were false that a third-party buyer would purchase the gloves if Burgess immediately executed the Release, and that after the Release was signed, the buyer had changed its mind.

Defendant argues that Plaintiff's "blind reliance on the purported representation of an unidentified buyer" was unreasonable.  However, the FAC sufficiently shows that Plaintiff's reliance was reasonable given the context of the transaction.  "To plead a claim for fraud in the inducement or fraudulent concealment, [a] plaintiff must allege facts to support the claim that it justifiably relied on the alleged misrepresentations." *ACA Fin. Guar. Corp. v. Goldman, Sachs & Co.*, 32 N.E.3d 921, 922 (N.Y. 2015).  A plaintiff's reliance is not justifiable, "if the facts represented are not matters peculiarly within the defendant's knowledge, and the plaintiff has the means available to it of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation," and the plaintiff does not use those means. *Id*.  The FAC alleges that the identity of any such buyer was known only to Defendants and not to Plaintiff and supports the reasonable inference that Plaintiff did not have the means to verify the buyer's existence because Defendants pressured Plaintiff into making its decision hastily.  The FAC states that Plaintiff "was informed that if he signed the release immediately (i.e. within the hour), Defendants LINKER, SAFDEYE and INOV8 had a buyer who would purchase all of the non-conforming gloves, relieving Plaintiff of its massive losses."  Given these time constraints,

Plaintiff could not have independently inquired into the existence of the buyer.  *See, e.g.*, *Gordon P. Getty Fam. Tr. v. Peltz*, No. 93 Civ. 3162, 1998 WL 148425, at *6 (S.D.N.Y. Mar. 27, 1998) (rejecting argument that Plaintiff should have verified the information he received "[i]n light of the extreme time pressure imposed on Plaintiff in making its decision").  Defendants argue that Plaintiff was already on notice of potential fraud based on the FAC's allegation that Plaintiff suspected Defendants of price fixing and knowingly providing non-nitrile gloves.  This argument is misplaced because, drawing reasonable inferences in favor of Plaintiff, even if Plaintiff was suspicious, Plaintiff reasonably chose to sign the Agreement rather than risk the loss of a buyer.  The Release does not bar the FAC's claims at this stage of the litigation.[3]

### 3.  Pleading Fraud with Specificity

Defendant incorrectly argues that the FAC does not plead fraudulent inducement with requisite specificity.  Fraud claims are subject to a "heightened pleading standard" under Federal Rule of Civil Procedure 9(b).  *Rombach v. Chang*, 355 F.3d 164, 170-71 (2d Cir. 2004); *accord Phoenix Cos., Inc. v. Concentrix Ins. Admin. Sols. Corp*., 554 F. Supp. 3d 568, 592 (S.D.N.Y. 2021).  A plaintiff must "state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  Under this standard, a complaint alleging fraud typically must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."

---

[3] This decision expresses no opinion about Plaintiff's other challenges to the validity of the Agreement, which may be raised at a later stage of the litigation.

*United States ex rel. Chorches v. Am. Med. Response, Inc*., 865 F.3d 71, 81 (2d Cir. 2017);

*accord Ramiro Aviles v. S & P Glob., Inc*., 380 F. Supp. 3d 221, 256 (S.D.N.Y. 2019).

The FAC's third-party buyer allegation satisfies Rule 9(b).  The FAC specifies the false statement, identifies the speakers as Safdeye and Linker, asserts that the statement was made on or about March 4, 2021, explains a plausible motive for making the statement and makes clear from the context how the statement was fraudulent.  Consistent with Rule 9(b), the FAC alleges Defendants' malice and fraudulent intent generally.  The only missing detail is where or by what means the statement was made.  The FAC does allege that Linker sent repeated text messages every few moments insisting that Plaintiff sign the Agreement.  Given the facts alleged, the fraudulent inducement claim is sufficiently specific to satisfy the purpose of Rule 9(b).  *See United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25-26 (2d Cir. 2016) ("The purpose of Rule 9(b) is threefold -- it is designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit.").  Contrary to Defendants' argument, Rule 9(b) requires a sufficiently detailed description of the alleged fraud, not that the fraudulent statement be specific -- i.e., by identifying the third-party buyer.

### 4.  Merger and Other Clauses

Defendants argue that the Agreement's merger clause, "no subsequent discovery" clause and "no representation" clause together bar any consideration of any allegedly false statements because these provisions supersede and disclaim any reliance on representations extrinsic to the Agreement.  The clauses are insufficiently specific to bar consideration of the allegedly false statements.  Under New York law, a general disclaimer will not prevent a plaintiff from using representations outside the contract to establish fraudulent inducement.  *See Danann Realty*

11

*Corp. v. Harris*, 157 N.E.2d 597, 598-99 (N.Y. 1959) ("[W]here the complaint states a cause of action for fraud, the parol evidence rule is not a bar to showing the fraud [] in the inducement . . . despite an omnibus statement that the written instrument embodies the whole agreement, or that no representations have been made.").  Unlike general disclaimers, only specific disclaimers of the fraudulent representations in the contract will bar consideration.  *See id.* at 599; *Barnaba Realty Grp., LLC v. Solomon*, 994 N.Y.S.2d 356, 358 (2d Dep't 2014) ("While a general merger clause is ineffective to exclude parol evidence of fraud in the inducement, a specific disclaimer defeats any allegation that the contract was executed in reliance upon contrary oral representations.").  A disclaimer is sufficiently specific to preclude a fraud claim "only where the clause specifically disclaims representations concerning the very matter to which the fraud claim relates."  *Pike Co., Inc. v. Jersen Const. Grp., LLC*, 47 N.Y.S.3d 579, 581 (4th Dep't 2017); *Laduzinski v. Alvarez & Marsal Taxand LLC*, 16 N.Y.S.3d 229, 233 (1st Dep't 2015) (concluding merger clause was "too general" because it made "no reference to the particular misrepresentations allegedly made").

None of the provisions contains any reference to the particular misrepresentation alleged -- that there was a third-party buyer.  Defendant argues that the provisions read together as a whole establish a specific disclaimer of reliance on "any representation or alleged promise by any person."  However, combining the three general disclaimers together does not create a specific disclaimer.  Together or alone, the contractual disclaimers are too general to bar Plaintiff's claim of fraud in the inducement.

### 5.  Law of the Case

Defendant argues that the California district court's transfer decision compels the outcome here under the law of the case doctrine.  It does not.  The law of the case doctrine holds

that "[w]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case, absent cogent and compelling reasons to the contrary." *JLM Couture, Inc. v. Gutman*, 91 F.4th 91, 101 (2d Cir. 2024).  The "law of the case principles apply in transferred cases." *Kaplan v. Bank Saderat PLC*, 77 F.4th 110, 122 (2d Cir. 2023).  However, "the law of the case doctrine only applies to issues that have actually been decided." *Beaumont v. Vanguard Logistics Servs. (USA), Inc.*, No. 22 Civ. 6235, 2023 WL 8355437, at *1 (S.D.N.Y. Dec. 1, 2023); *cf. Cangemi v. United States*, 13 F.4th 115, 140 (2d Cir. 2021) ("The law of the case doctrine cannot bar a district court from holding plaintiffs to their ever-increasing burden of proof over the course of a lawsuit.").

The Central District did not decide the issue now raised by Defendant's motion to dismiss.  The California court applied California law to determine the validity of the Agreement and federal law to determine the enforceability of the forum selection clause for purposes of transfer.  *See Bur-Tex Hosiery Inc.*, 2023 WL 3267752, at *2-4. ("[T]he court applies California law to the issue of whether a valid contract exists in the first place.").  The decision did not address whether the FAC sufficiently alleges that the Agreement was procured by fraud under New York law.  The law of the case doctrine thus does not compel the outcome here.  *See, e.g.*, *U.S. Bank Nat'l Ass'n ex rel. Lima Acquisition LP v. PHL Variable Ins. Co.*, No. 12 Civ. 6811, 2014 WL 998358, at *4 (S.D.N.Y. Mar. 14, 2014) (after an order transferring the case, determining that "the law of the case doctrine has no bearing on" defendant's motion to dismiss in part because plaintiff filed amended complaints after transfer and in part because the newly consolidated action "is governed by New York, not California, law").  Defendant's argument that the parties will be put in a "vicious circle" of litigation in which this action could be transferred

back to the Central District of California is unavailing.  This Order does not contradict the Central District's conclusion that the forum selection clause is enforceable.

### B.  Personal Jurisdiction

Defendants, in the alternative, move to dismiss the FAC as to Defendants Linker, WT23 and Kouyoumijan under Rule 12(b)(2) for lack of personal jurisdiction.  Plaintiff argues that personal jurisdiction exists over Defendants Linker, WT23 and Kouyoumijan because (1) they consented to personal jurisdiction under the Agreement, (2) they are alter egos of the Defendants who are subject to personal jurisdiction and (3) they are co-conspirators of the Defendants who are subject to personal jurisdiction.  The FAC does not plead facts sufficient to show jurisdiction over Linker, WT23 and Kouyoumijan under any of these theories.

### 1.  Applicable Law

To survive a motion to dismiss pursuant to Rule 12(b)(2), "a plaintiff must make a prima facie showing that jurisdiction exists."  *Chufen Chen v. Dunkin' Brands, Inc*., 954 F.3d 492, 497 (2d Cir. 2020).  "A prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion."  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A*., 722 F.3d 81, 86 (2d Cir. 2013); *accord Averbach v. Cairo Amman Bank*, No. 19 Civ. 4, 2023 WL 5016884, at *10 (S.D.N.Y. June 30, 2023).  To make out a prima facie case of personal jurisdiction, a plaintiff must establish "a statutory basis for personal jurisdiction" and that "the exercise of personal jurisdiction . . . comport[s] with constitutional due process principles."  *Fuld v. Palestine Liberation Org*., 82 F.4th 74, 85 (2d Cir. 2023).  "In the context of personal jurisdiction, due process demands that each defendant over whom a court exercises jurisdiction have some minimum contacts with the forum such that the maintenance of the suit does not

14

offend traditional notions of fair play and substantial justice." *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 269 (2d Cir. 2023).

In evaluating whether Plaintiff has made out a prima facie case of personal jurisdiction, a court must "construe the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Dorchester Fin. Sec., Inc.*, 722 F.3d at 85; *accord Harrington Glob. Opportunity Fund, Ltd. v. CIBC World Mkts. Corp.*, No. 21 Civ. 761, 2023 WL 6316252, at *2 (S.D.N.Y. Sept. 28, 2023). However, courts will not resolve "argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013); *accord Allianz Glob. Invs. GmbH v. Bank of Am. Corp.*, 457 F. Supp. 3d 401, 407 (S.D.N.Y. 2020). "Conclusory non-fact-specific jurisdictional allegations or legal conclusions couched as a factual allegation will not establish a prima facie showing of jurisdiction." *DeLorenzo v. Viceroy Hotel Grp., LLC*, 757 F. App'x 6, 8 (2d Cir. 2018) (summary order); *accord Comunale v. Gemma*, No. 18 Civ. 12104, 2020 WL 635554, at *2 (S.D.N.Y. Feb. 11, 2020).

### 2. Consent

The Agreement contains an express provision that "[a]ll Parties to this Agreement consent to personal jurisdiction in such courts." The capitalized term "Parties" is defined in the Agreement's preamble as Plaintiff and INOV8. Defendants Linker, WT23 and Kouyoumijan did not consent to personal jurisdiction as they are not parties to the Agreement. Generally, only the parties to a contract are bound by its terms. *See Highland Crusader Offshore Partners, L.P. v. Targeted Delivery Techs. Holdings, Ltd.*, 124 N.Y.S.3d 346 (1st Dep't 2020). A contract containing an express consent to personal jurisdiction in its forum selection clause can apply to a

non-signatory if the non-signatory is "closely related to a signatory of the agreement." *NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 350 (S.D.N.Y. 2020).

The FAC does not contain facts to show that Linker, Kouyoumijan or WT23 is so closely related to INOV8 to warrant enforcement of the Agreement against the non-signatories. "Whether a party is closely related to a signatory is a fact-specific inquiry . . . ." *Doe v. Telemundo Network Grp. LLC*, No. 22 Civ. 7665, 2023 WL 6259390, at *10 (S.D.N.Y. Sept. 26, 2023). "In determining whether a non-signatory is closely related to a signatory, . . . the inquiry should focus on whether the nonparty's enforcement of the forum selection clause is foreseeable by virtue of the relationship between the nonparty and the party sought to be bound." *Highland Crusader Offshore Partners, L.P.*, 124 N.Y.S.3d at 352. A relationship between a parent and subsidiary, for example, is sufficiently close when "[i]t [is] clear that the entities not only consulted with each other, but also were both involved in the decision-making process from the inception of the agreement through the commencement of the litigation." *Id*. at 353.

As to Kouyoumijan and WT23, the FAC alleges only that INOV8 sourced the Products from Kouyoumijan and WT23 and that Plaintiff's payments to Kouyoumijan and WT23 were processed through INOV8. These alleged facts are insufficient to show anything more than a business arrangement between the signatory (INOV8) and the non-signatories (Kouyoumijan and WT23).

The FAC pleads more facts as to Linker but is still insufficient to show that Linker is bound by INOV8's consent in the Agreement to personal jurisdiction. The FAC alleges that Linker introduced Plaintiff to INOV8 and its CEO Safdeye; INOV8, together with Linker and Safdeye, sourced the gloves; Linker communicated with Plaintiff about the availability of gloves, provided a test report of their composition and communicated about the terms of payment to be

made to INOV8; Linker received a commission from Plaintiff and INOV8 on Plaintiff's purchases; Linker, together with INOV8 and Safdeye, presented the Agreement and Release to Plaintiff and Linker (a non-signatory) pressured Plaintiff to sign it.  These allegations suggest that Linker acted as a broker or intermediary between Plaintiff as buyer and INOV8 as seller. This is insufficient to bind Linker to the Agreement between the two principals.  *See, e.g.*, *Shipco Transp., Inc. v. Roll on Roll off Co.*, No. 22 Civ. 3577, 2023 WL 4824452, at *5 (S.D.N.Y. July 27, 2023) (concluding that "all that the[] allegations amount to is that [the non-party] was an intermediary . . . acting on behalf of a disclosed principal and, in doing so, [] had no reason to suspect it would be hauled into a foreign forum it did not consent to . . .").

Plaintiff argues that, "[i]n asserting that the Release applies to each of the Defendants, the Defendants agreed to be bound by each of the provisions of the Release [including the consent to jurisdiction]."  Plaintiff cites no legal authority for this novel proposition and the Court is aware of none.  By its terms, the Release broadly covers all persons acting in concert with the parties to the Agreement (which includes Defendants), but the personal jurisdiction and choice of forum provisions apply only to the parties to the Agreement.

Plaintiff also argues in a footnote that Linker waived his objection to personal jurisdiction by litigating this action.  Linker has not waived his objection.  A defendant waives an objection to personal jurisdiction by failing to raise the defense in the first responsive papers the defendant files.  *See Kaplan Grp. Invs. LLC v. A.S.A.P. Logistics Ltd.*, No. 22 Civ. 7326, 2023 WL 6214909, at *4 (S.D.N.Y. Sept. 25, 2023) (finding defendant did not waive when defense was asserted in motion to dismiss that predated answer, but not in the answer).  Linker has not filed an answer, nor did he file any previous motion to dismiss.  The first responsive paper he filed was the instant motion to dismiss, which challenges personal jurisdiction.

17

### 3. Alter Ego

Defendant does not dispute the Court's jurisdiction over World Tech Toys.  Plaintiff argues that the Court "accordingly" has personal jurisdiction over WT23 and Kouyoumijan as alter egos of World Tech Toys.  The FAC does not support this conclusion.  "[I]n general, alter egos are treated as one entity for jurisdictional purposes." *Transfield ER Cape Ltd. v. Indus. Carriers, Inc*., 571 F.3d 221, 224 (2d Cir. 2009) (New York law); *accord Glob. Gaming Philippines, LLC v. Razon*, No. 21 Civ. 2655, 2022 WL 836716, at *4 (S.D.N.Y. Mar. 21, 2022). In the case of a parent corporation and its subsidiary, for example, "[t]he alter-ego theory provides for personal jurisdiction if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction." *In re Platinum & Palladium Antitrust Litig*., 61 F.4th at 274.

The FAC does not plead sufficient facts to establish an alter ego relationship between World Tech Toys on the one hand WT23 or Kouyoumijan.  When determining personal jurisdiction based on the alter ego theory, courts apply a "less onerous standard" than that necessary to pierce the corporate veil for liability purposes under New York law.  *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) (New York law); *accord Glob. Gaming Philippines, LLC*, 2022 WL 836716, at *4.  A plaintiff need only show that one entity was subject to the "complete domination of the other" to establish an alter ego relationship for personal jurisdiction.  *Bank of Am. v. Apollo Enter. Sols., LLC*, No. 10 Civ. 5707, 2010 WL 4323273, at *4 (S.D.N.Y. Nov. 1, 2010) (New York law).  The FAC merely alleges that that Kouyoumijan "was an owner, director, officer, or managing agent, authorized to act on behalf of" World Tech Toys and was the "decision maker" for World Tech Toys and WT23.  The FAC also asserts in rote fashion that "Defendant corporations did not adhere to corporate

separateness," which was "illusory" and "used . . . to achieve fraud." These conclusory statements are insufficient to establish an alter ego relationship. *See, e.g.*, *Long Side Ventures LLC v. Hempacco Co.*, No. 22 Civ. 8152, 2023 WL 6386888, at *7-10 (S.D.N.Y. Sept. 29, 2023) (finding no personal jurisdiction because complaint contained "purely conclusory allegations of alter-ego status").

### 4. Conspiracy

Defendants Linker, WT23 and Kouyoumijan are not subject to personal jurisdiction under a conspiracy-based theory. New York's long-arm statute provides for jurisdiction over a non-domiciliary who "in person or through an agent . . . commits a tortious act within the state . . . ." CPLR § 302(a)(2). Under Section 302(a)(2), a conspirator's actions in New York as the agent for an out-of-state co-conspirator can provide a basis for jurisdiction over the out-of-state party. *See Wimbledon Fin. Master Fund, Ltd. v. Weston Cap. Mgmt. LLC*, 76 N.Y.S.3d 121, 123 (1st Dep't 2018). To establish jurisdiction under a conspiracy-based theory, the complaint "must allege . . . that the [out-of-state defendant] was a part of a conspiracy involving overt acts in New York," and second, a three-part requirement must be alleged: "(a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted at the direction or under the control, or at the request of or on behalf of the out-of-state defendant." *FAT Brands Inc. v. Ramjeet*, 75 F.4th 118, 126 (2d Cir. 2023) (New York law); *Lawati v. Montague Morgan Slade Ltd.*, 961 N.Y.S.2d 5, 7 (1st Dep't 2013). To confer jurisdiction, defendants must have known of or should have anticipated overt acts in New York to advance the conspiracy. *See Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 124-25 (2d Cir. 2021) (stating that the fact that defendants should have

anticipated that co-conspirators in the forum would engage in overt acts to advance the conspiracy suffices for a prima facie case of minimum contacts); *Lawati.*, 961 N.Y.S.2d at 8 ("[By] joining the conspiracy with the knowledge that overt acts in furtherance of the conspiracy had taken place in New York . . . [the defendant] purposely availed himself of the privilege of conducting activities within New York."). This theory of jurisdiction fails because the FAC alleges no conspiracy, no conduct in New York or any of the other necessary facts.

### C. Noncompliance with Individual Rules

Plaintiff suggests that Defendants should be sanctioned for filing an exhibit in excess of the page limits required by this Court's Individual Rules. The offending exhibit is Exhibit 1 to the McKown Declaration -- Plaintiff's own FAC which, with attachments, is 168 pages long. While the Court does not condone a violation of its rules, Defendants' conduct does not justify sanctions. A court has "inherent power to supervise and control its own proceedings and to sanction counsel or a litigant for bad-faith conduct." *Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995); *accord Reisman v. Ne. Power & Gas LLC*, No. 23 Civ. 620, 2023 WL 8259289, at *1 (S.D.N.Y. Nov. 29, 2023). Nothing suggests that Defendants acted in bad faith, particularly as the FAC is already on the docket, and the excess pages were not used to put new information before the Court. The request for sanctions is denied.

*       *       *

For the foregoing reasons, the motion to dismiss is **DENIED**, except as to Defendants Linker, WT23 and Kouyoumijan as to whom the motion to dismiss is **GRANTED** for lack of personal jurisdiction. If Plaintiff wishes to replead in an effort to obtain personal jurisdiction over Defendants Linker, WT23 and/or Kouyoumijan, by **March 19, 2024,** Plaintiff may file a letter seeking leave to do so, along with a proposed second amended complaint marked to show

20

changes from the FAC.  The letter should explain how the changes remedy the deficiencies identified herein.  Plaintiff is reminded that conclusory allegations are insufficient to make the necessary showing.  If Plaintiff does file such a request, Defendants shall respond by **March 26, 2024**.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 107.

Dated: March 7, 2024
      New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**